UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Eric Wong,                                         Case No. 0:13-cv-3378 DWF/JSM

                    Plaintiff,

        vs.                                        **DEFENDANTS' MEMORANDUM**
                                                   **OF LAW IN SUPPORT OF THEIR**
Minnesota Department of Human Services,            **MOTION TO DISMISS**
Lucinda Jesson, Commissioner of
Minnesota Department of Human Services,
Hennepin County Human Services and
Public Health Department, Rex A.
Holzemer, Director of Hennepin County
Human Services and Public Health
Department,

                    Defendants.


## INTRODUCTION

Plaintiff brings this action under Title II of the Americans with Disabilities Act

("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA"), and 42 U.S.C. § 1983

against the various state employees in their official capacities, Minnesota Department of

Human Services ("DHS"), and Hennepin County Human Services ("HCHS") alleging

that he was discriminated against and did not receive "full" benefits under the Minnesota

Supplemental Aid Act ("MSA"), specifically shelter needy allowance, due to his

disability.  Moreover, Plaintiff also appeals the Order of the Commissioner of DHS,

pursuant to Minnesota Statutes, section 256.045, subdivision 7, denying Plaintiff shelter

needy allowance under the MSA.  Lastly, Plaintiff also claims that Defendants violated

Minnesota Statutes sections 256D.395 and 256D.405.  For the reasons set forth below,

Defendants DHS and Lucinda Jesson, Commissioner of DHS, move the Court for an order dismissing Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction.

## FACTUAL BACKGROUND

Plaintiff's claims arise from Plaintiff's evidentiary hearing pursuant to Minnesota Statutes section 256.045, subdivision 3, before Human Services Judge Marion F. Rucker ("HSJ") on August 22, 2013.   The issue at the hearing was whether HCHS correctly denied Plaintiff's "request for the Minnesota Supplemental Aid housing allowance on the grounds, he does not meet the eligibility criteria."  Ex. A, p. 2.  All other claims alleged by Plaintiff, that (1) "his MSA base and 'special diets' benefits should be reinstated in light of the erroneous nature of his case closure" and (2) "that he should be awarded back pay of the MSA 'special diets' benefits" were resolved prior to the evidentiary hearing. Compl. ¶¶ 44-45.

## I.  STATUTORY FRAMEWORK FOR THE MINNESOTA SUPPLEMENTAL AID SHELTER NEEDY ALLOWANCE.

Under Minnesota statute, payments are allowed for certain special needs of recipients of MSA who are not "residents of a nursing home, a regional treatment center, or a group residential housing facility."  Minn. Stat. § 256D.44, subd. 5 (2012).  The statute indicates that a recipient may receive additional allowance if the recipient is under the age of 65, qualifies as "shelter needy" and meets either of the following three criteria: (1) relocating from an institution, or an adult mental health residential treatment; (2) "eligible for the self-directed supports option as defined under section 256B.0657,

subdivision 2;" or (3) is a home and community-based waiver recipient. Minn. Stat. § 256D.44, subd. 5(f)(1).

Plaintiff attempted to receive MSA shelter needy allowance by establishing that he was eligible for self-directed supports option. A recipient is eligible for the self-directed supports option where:

1. the individual is a recipient of medical assistance;
2. *eligible for personal care assistance services*;
3. "lives in the person's own apartment or home, which is not owned, operated, or controlled by a provider of services not related by blood or marriage;"
4. "has the ability to hire, fire, supervise, establish staff compensation for, and manage the individuals providing services, and to choose and obtain items, related services, and supports as described in the participant's plan;" and
5. has not been excluded or disenrolled by the commissioner.

Minn. Stat. § 256B.0657, subd. 2(a) (2012) (emphasis added). Therefore, a recipient cannot receive shelter needy allowance unless he is eligible for personal care assistance ("PCA") services.

Personal care assistance services are provided to individuals with disabilities and others who require assistance to accomplish activities of daily living so that they may remain in their homes and avoid placement in more restrictive settings. The services provided by PCA include assistance with activities of daily living ("ADL"), assistance with instrumental activities of daily living ("IADLS"), such as grocery shopping and meal preparation, observation and redirection of harmful or challenging behaviors, and help with health-related tasks. Minn. Stat. § 256B.0659, subd. 2(a). Personal care assistance services may assist with the following eight ADLs – eating, bathing, dressing, grooming, toileting, positioning, transferring, and mobility. Minn. Stat. § 256B.0659,

subd. 2(b).  To determine eligibility for PCA services, a county public health nurse or a certified public health nurse *must* conduct an in-person assessment.  Minn. Stat. § 256B.0659, subds. 3(a) and 4.  An "assessment" consists of a "review and evaluation of a recipient's need for personal care assistance services conducted in person."  *Id.*  Generally, the assessor visits the home of the recipient and reviews the individual's daily needs and health through observation and questioning, including questions to:

1.    see if the recipient needs a responsible party;
2.    learn the recipient's need for assistance with ADLs and IADLs;
3.    review and document use of medications;
4.    learn about the recipient's health issues; and
5.    learn about the recipient's behavior[1]

The assessor also documents his/her observations and information reported by the recipient.[2]  An assessment usually takes about an hour to complete.[3]

## II.    HUMAN SERVICES EVIDENTIARY HEARING.

This matter came before the HSJ on August 22, 2013.  At the hearing, Plaintiff entered exhibits A-D into the record, which included, in relevant part,

---

[1] PCA assessment and service plan (Mar. 10, 2014, 1:00 p.m.), http://mn.gov/dhs/people-we-serve/people-with-disabilities/services/home-community/programs-and-services/PCA/assessment-service-plan.jsp, attached as Ex. C, pp. 1-2; *see also* Personal Care Assistance (PCA) Assessment and Service Plan (Mar. 10, 2014, 1:02 p.m.), https://edocs.dhs.state.mn.us/lfserver/Public/DHS-3244-ENG, attached as Ex. C, pp. 3-15.
[2] *See* PCA Assessment and Service Plan Instructions and Guidelines (Mar. 10, 2014, 1:04 p.m.), https://edocs.dhs.state.mn.us/lfserver/Public/DHS-3244A-ENG attached as Ex. C, pp. 16-34.
[3] Ex. C, pp. 1-2.

1.  Notice of Closure of MSA Case dated April 15, 2013;
2.  Appeal Letter from Eric Wong to Hennepin County re: MSA Case Closure & SNAP Reduction dated April 25, 2013;
3.  Second Appeal Letter from Eric Wong to Hennepin County re: MSA Case Closure & SNAP Reduction dated May 2, 2013;
4.  Letter from Dr. James Agre, M.D. re: Comprehensive Functional Capacity Evaluation of Eric Wong dated August 12, 2010[4];
5.  Appeal Letter from Eric Wong to Hennepin County re: MSA Special Needs & "Shelter Needy" Determination  dated September 7, 2012; and
6.  Appeal Letter from Eric Wong to Hennepin County re: DHS-5986-ENG Form dated September 26, 2012.[5]

Plaintiff indicated in his correspondence with HCHS that he believed he was eligible for shelter needy allowance.  In Plaintiff's correspondence on September 7, 2012, Plaintiff indicated that:

---

[4] Dr. Agre prepared this letter in response to a request to perform a *comprehensive functional capacity evaluation* because Plaintiff applied for insurance coverage to get a motorized wheelchair.  Ex. B, p. 6.  Dr. Agre neither addressed any of the requirements for a PCA assessment nor opined as to whether he believed a PCA assessment was physical in nature.

[5] These documents are incorporated and attached as Exhibit B to Defendants' Motion to Dismiss.  As discussed in greater detail below in the Standard of Review section, Defendants do not attach these documents in an attempt to turn this Rule 12 motion into a Summary Judgment motion.  Exhibit B consist of documents referenced by Plaintiff in the body of his Complaint, in particular his evidentiary hearing before the HSJ.  As such, the documents are relevant and should be used by the Court in determining whether to dismiss Plaintiff's claims.

> I am eligible for the MSA Shelter Special Needs Allowance and the "shelter needy" status that raises my MSA base standard to the $759 single living alone standard.  As with all disabled SSI recipients I'm eligible for the MA Self-directed Supports Option because I'm eligible for the MA Personal Care Assistance Program for the disabled (I've been assessed for it too).  The SSA[6] can't consider a person disabled unless they need more assistance than it takes to qualify for PCA services.  I currently receive MSA benefits, I'm under 65 years old and my rent alone is 56% of my gross income.  Like the Special Diets Benefit, I am fully eligible for the Shelter Allowance and have been from the day I became eligible for MSA.

Ex. B, pp. 8-9.  Plaintiff also indicated to HCHS in his April 25, 2013, letter that:  "I would like to reaffirm my eligibility for all of the MSA special needs programs including the Special Diets and Shelter Special Needs Allowance.  As my monthly income has not changed, I request that my MSA case be reinstated and all of my benefits be allowed for payment."  Ex. B, p. 4.  Plaintiff does not allege that at any time prior to his evidentiary hearing before the HSJ, he requested an accommodation for his PCA assessment.  *See* Ex. B; Compl.

In addition to Plaintiff's submitted documents, Plaintiff further argued that "medical evaluations by personnel who are not extremely familiar with his condition"

---

[6] Plaintiff incorrectly compares the disability determination process of the Social Security Administration ("SSA"), which is governed by federal law, to that of the PCA assessment, which is governed by Minnesota statute.  The SSA looks at a recipient's condition as it relates to his ability to work and provide for himself, (*see* Social Security Disability Benefits Brochure (Mar. 10, 2014, 1:10 p.m.), http://www.socialsecurity.gov/pubs/EN-05-10029.pdf, attached as Ex. C, pp. 35-49 *see also Disability Planner: What We Mean By Disability* (Mar. 10, 2014, 1:12 p.m.), http://www.socialsecurity.gov/dibplan/dqualify4.htm, attached as Ex. C, p. 50), whereas the PCA assessment examines a recipient's need for services and supports needed to move to or remain in the community, such as need of services, level of care, or activities of daily living as they relate to the need for services.

would be "dangerous to [Plaintiff's] health and safety."  Ex. A., Findings of Fact ¶ 6. Lastly, Plaintiff requested, for the first time at the Human Services Hearing, that "his alternative documentation of his limitations in major life activities be accepted as proof of his eligibility for PCA services, in place of the nurse assessment as a reasonable accommodation under the Americans with Disabilities Act."  *Id.*

The HSJ concluded that an assessment must be completed before Plaintiff can be considered eligible for PCA services.  Ex. A, Concl. ¶ 11.  The HSJ further held that reasonable accommodations could be made, "when conducting a PCA assessment," but that the ADA did "not negate the requirements set forth in law for a MSA shelter needy allowance or PCA assessments."  Ex. A, Concl. ¶ 10.  The Commissioner filed an Order adopting the HSJ's decision on October 30, 2013.  *See* Ex. A.

## III.   PLAINTIFF'S APPEAL & SUBSEQUENT CLAIMS.

Pursuant to Minnesota Statutes section 256.045, subdivision 7, "any party who is aggrieved by an order by the commissioner of human services may appeal the order to the district court of the county responsible for furnishing assistance by…filing the original notice with the court administrator of the district court."  In this case, Plaintiff had the option of appealing the Commissioner's Order to Hennepin County District Court.  Plaintiff, however, filed a Complaint in this Court alleging violations under the ADA, RA, and 42 U.S.C. § 1983 against the various state employees in their official capacity, DHS and HCHS.  *See generally* Compl.

Plaintiff alleges that he was excluded from receiving MSA shelter needy allowance because of his inability "to safely undergo" a PCA assessment "without

serious danger to his health and safety"[7] due to his diagnoses of Ehlers-danlos syndrome ("EDS").  Compl. ¶¶ 3, 50, 58, 67.  Plaintiff also asserts that Defendants failed to provide him with a reasonable accommodation or modify their policies or practices "so that the risk of bodily harm or severe pain from the assessment process could be eliminated."  Compl. ¶¶ 62, 68.

Plaintiff also alleges violations under 42 U.S.C. § 1983, claiming Defendants denied him his procedural due process right of notice and a meaningful opportunity to be heard and that his equal protection right was violated.  *See* Compl. ¶¶ 74, 77.  Lastly, Plaintiff also requests judicial review of the Commissioner's Order pursuant to Minnesota Statutes section 256.045, subdivision 7, claiming that the Order was "erroneous and contrary to federal and state law, and should be reversed."  Compl. ¶ 80.

## ARGUMENT

### I.   STANDARD OF REVIEW.

When considering a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001).  Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, streamlining "litigation by dispensing with

---

[7] Plaintiff alleges that he has refrained from undergoing a PCA assessment "due to his well-substantiated fear and apprehension of bodily harm and/or severe pain from a physical examination...."  Compl. ¶ 48.  Plaintiff, however, does not plead any facts in his Complaint to indicate how the statutory PCA assessment is physical in nature and how it will cause him physical pain.

needless discovery and fact finding." *Neitzke v. Williams,* 490 U.S. 319, 326-37 (1989). To survive a motion to dismiss, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). This requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Farnham Street Fin., Inc. v. Pump Media, Inc.*, No. 09-233, 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (quoting *Iqbal*, 556 U.S. at 678).

Although materials outside of the pleadings may not be considered in a Rule 12 motion, this Court may consider documents "necessarily embraced by the complaint." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (citation omitted); *see also BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003). It is well settled that documents that are necessarily embraced by the complaint are not considered to be materials outside the pleadings. Furthermore, public documents may also be considered in Rule 12 motions. *See e.g., Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (noting that a party's "financing

statement [was] on file with the state of Minnesota and thus [was] a public record that [could] be considered even if not mentioned expressly in the pleadings.").   Therefore, public documents and documents embraced by Plaintiff's complaint are properly part of the Rule 12 record.

## II.   THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIMS FOR MONETARY RELIEF AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because such claims are barred by the Eleventh Amendment.[8]   A lawsuit "against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the officials' office" and "[a]s such is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)).   A suit seeking to recover damages to be paid by the state is barred by the Eleventh Amendment absent the state's consent to the suit.   *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974).[9]

---

[8] To the extent that this suit for damages under 42 U.S.C. § 1983 is brought against Defendants in their official capacities, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because such claims are barred by the Eleventh Amendment.
[9] The Eleventh Amendment does not bar suits against state officials acting in their official capacities for prospective injunctive relief.   *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (citation omitted).   Injunctive relief, however, would become moot should Defendants' Motion to Dismiss be granted.

Section 5 of the Fourteenth Amendment[10] allows Congress to abrogate a state's Eleventh Amendment immunity. *See Klingler v. Dir., Dep't of Revenue*, 455 F.3d 888, 893 (8th Cir. 2006).   Abrogation of a state's Eleventh Amendment immunity is considered on a case by case basis and  Title II of the ADA does not abrogate a state's sovereign immunity where action is not within Congressional power to enforce fundamentally a plaintiff's constitutional right through the Fourteenth Amendment. *Id.* The Court should consider Title II as a whole, rather than limiting its analysis to a specific regulation, when determining whether a state has waived its Eleventh Amendment immunity. *Id.* at 896-97 (finding that reasonable accommodation provisions of Title II of the ADA did not validly abrogate the state's sovereign immunity).

Here, the State of Minnesota has not waived its Eleventh Amendment immunity in this case. *See* Minn. Stat. § 1.05 (2012).  The State of Minnesota also has not consented to suit.  Even if the Court finds that the ADA abrogates the state's Eleventh Amendment immunity, Plaintiff would not be entitled to retroactive compensation – "monetary loss resulting from a past breach of legal duty." *Miener v. State of Mo.*, 673 F.2d 969, 982 (8th Cir. 1982) (finding that an award for "tuition reimbursement would clearly be barred as an award of damages for past breach of legal duty under this test.") (citation omitted). The monetary compensation must be characterized as a "necessary consequence of

---

[10] Although a provision of the ADA purports to abrogate a state's Eleventh Amendment immunity, such provision exceeds Congress's power under Section 5 of the Fourteenth Amendment and, therefore, is invalid. *See Jamison v. Delaware*, 340 F. Supp. 2d 514 (D. Del. 2004).

compliance in the future with a substantive federal question determination." *Id.* Moreover, compensatory damages are only awarded if "discriminatory intent" is shown on the part of Defendants. *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011).

Here, any monetary compensation awarded to Plaintiff would be a result of a past breach and not for future compliance.   Therefore, to the extent that Plaintiff seeks monetary damages from Defendants in their official capacities, his claims are barred by the Eleventh Amendment and should be dismissed.

## III.   THE COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFF'S APPEAL OF THE COMMISSIONER'S ORDER PURSUANT TO MINNESOTA STATUTES SECTION 256.045, SUBDIVISION 7.

Plaintiff alleges that the HSJ's decision, and subsequent Commissioner's Order, was "erroneous and contrary to federal and state law, and should be reversed." Compl. ¶ 80.   Judicial review of the State Administrative Decision is governed by Minnesota Statutes section 256.045, subdivision 7.   This Court has no jurisdiction over state agency decisions and, therefore, should not hear this appeal.

Minnesota Statutes section 256.045, subdivision 7, reads in relevant part that "any party who is aggrieved by an order by the commissioner of human services may appeal the order to *the district court of the county responsible for furnishing assistance* by…filing the original notice with the court administrator of the district court." (Emphasis added).   In *Wilson v. Dryden*, the plaintiff filed a claim challenging the Commissioner's order denying recoupment of overpayment of food stamp benefits pursuant to Minnesota Statutes section 256.045, subdivision 7.   169 F. Supp. 2d 1010,

1012-13 (D. Minn. 2001).   The Court declined to hear the case because it lacked jurisdiction. *Id.* at 1013.

Here, as in *Dryden*, the Court lacks jurisdiction to hear Plaintiff's claim.   Any appeal of the Commissioner's Order pursuant to Minnesota Statutes section 256.045, subdivision 7, should be heard before the state district court.   Therefore, Defendants respectfully request that this Court decline to hear this matter as it does not have jurisdiction to hear an appeal of the Commissioner's Order.

### IV.   PLAINTIFF IS PRECLUDED FROM BRINGING A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT.

Under Minnesota law, a Plaintiff is precluded from raising subsequent claims in a second action when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter."   *Semler v. Klang*, 603 F. Supp. 2d 1211, 1224 (D. Minn.2009) (internal quotation marks omitted).   Claim preclusion also applies to administrative decisions. *See Alexander v. Pathfinder, Inc.*, 91 F.3d 59, 62 (8th Cir. 1996) (noting that federal courts "must give a state agency's findings of fact the same preclusive effect that those findings would be entitled to in that state's courts"); *see also Everts v. U.S. Social Sec. Admin.*, No. 08-4690, 2009 WL 3062010, at *3 (D. Minn. Sept. 18, 2009) (finding that because the plaintiff "had a full and fair opportunity to litigate his claims… before the state agency," the plaintiff was precluded from challenging the judgment before the Minnesota District Court).

In *Alexander v. Pathfinder, Inc.*, the plaintiffs received an adverse administrative decision. 91 F.3d at 62. Instead of appealing, the plaintiffs filed a complaint in federal district court claiming, among other things, violations of the ADA and Section 504 of the RA. *Id.* Both the Federal District Court and the Eighth Circuit held that the administrative decision had "necessarily resolved factual issues that formed a predicate for those claims in favor of the defendants" and that the administrative decision did not undermine either the ADA or RA. *Id.* at 62-63.

Here, Plaintiff's claim involves the same set of nucleus facts as his appeal to the HSJ. *See* Compl. pp. 1-2. The claim before the HSJ involved Plaintiff and HCHS. Although DHS is included in this federal complaint, the parties and the interest involved is identical to the earlier appeal before the HSJ, analyzing Plaintiff's alleged ADA claim as it applies to MSA shelter needy allowance. Furthermore, there was a final judgment on the merits. The HSJ concluded that the ADA did "not negate the requirements set forth in law for a MSA shelter needy allowance or PCA assessments." Ex. A, Concl. ¶ 10. The Commissioner filed an Order adopting the HSJ's decision on October 30, 2013. *See* Ex. A. Plaintiff had a fair opportunity to be heard and an opportunity to appeal this matter to the state district court, but chose not to. Here, as in *Alexander*, the Commissioner's Order resolved factual issues presented by Plaintiff and the decision did not undermine the ADA. 91 F.3d at 62-63. Therefore, Plaintiff should be precluded from bringing this claim.

## V. PLAINTIFF IS NOT ENTITLED TO RELIEF AS DEFENDANTS DO NOT VIOLATE EITHER SECTION 504 OF THE REHABILITATION ACT OR THE AMERICANS WITH DISABILITIES ACT.[11]

Plaintiff alleges that he was excluded from receiving MSA shelter needy allowance because of his inability "to safely undergo" a PCA assessment "without serious danger to his health and safety" due to his diagnoses of EDS. Compl. ¶¶ 3, 50, 58, 67. First, Plaintiff cannot demonstrate that Defendants DHS or Jesson denied him MSA shelter needy allowance due to his disability. And second, Plaintiff's claim that a PCA assessment would cause serious danger to his person is misplaced.

To make a claim under Section 504 of the RA, Plaintiff must show that he "(1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on [his] disability." *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008) (citing *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.,* 178 F.3d 968, 971 (8th Cir. 1999)). To make a claim under the ADA, Plaintiff must demonstrate that "(1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (referencing 42 U.S.C. § 12131 *et seq.*).

---

[11] The Eighth Circuit has held that the ADA and the RA are "similar in substance" and "cases interpreting either are applicable and interchangeable." *Gorman v. Bartch,* 152 F.3d 907, 912 (8th Cir. 1998) (citing *Allison v. Dep't of Corr.,* 94 F.3d 494, 497 (8th Cir.1996)).

Both the ADA and the RA require that Plaintiff was discriminated against based on his disability. This Court has used the deliberate indifference standard to determine whether discrimination exists. *See AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1146 (D. Minn. 2008). Deliberate indifference has been described as a "stringent standard of fault." *Id.* at 1147 (referencing *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). For the standard to apply, a defendant must consciously disregard a plaintiff's right by either having actual knowledge that defendant's actions will violate the plaintiff's right or the violation is the "plainly obvious consequence" of the defendant's action. *See AP ex rel. Peterson*, 538 F. Supp. 2d at 1147.

Here, Plaintiff does not allege any facts that suggest that Defendants DHS and Jesson denied him MSA shelter needy allowance because of his disability. Defendants cannot be held vicariously liable for the alleged actions of HCHS.[12]   *See Clos v. Minnesota*, CIV. 064916 PAM/FLN, 2007 WL 3046229 (D. Minn. Oct. 16, 2007) (dismissing the plaintiff's ADA claim against the state defendants as it could not be vicariously liable for the actions of Wright County). There is no allegation in Plaintiff's Complaint that DHS or Commissioner Jesson exercised any control over HCHS in its decision to deny Plaintiff shelter needy allowance. As Defendants DHS and Jesson are

---

[12] The fact that HCHS denied Plaintiff's request for shelter needy allowance does not demonstrate a deliberate indifference on the part of the County. To receive PCA services, an individual must undergo a PCA assessment. Minn. Stat. § 256B.0659, subd. 4(a). Plaintiff refused to undergo an assessment. Therefore, Plaintiff was denied MSA shelter needy allowance because he was found not eligible for PCA services and not because of his EDS. *See Ex. A.*

not liable for the alleged conduct of HCHS, Plaintiff does not meet his pleading standard of "deliberate indifference" by the state Defendants, and therefore, does not have sufficient evidence to demonstrate that he was discriminated against because of his disability.

In addition, Plaintiff's assertion that the PCA assessment would cause him physical harm is misplaced. Nothing in either the statutory construction of section 256B.0659 or the public documents submitted as Exhibit C indicates that a PCA assessment is physical in nature. The information referenced above, and the fact that all individuals, regardless of disability, must undergo an assessment, demonstrates that Plaintiff's allegations that the PCA assessment would cause physical harm has no basis; Plaintiff's conclusory allegation does not change this result. As stated above, the Court need not view conclusory allegations stated in Plaintiff's Complaint as true. *See Ashcroft,* 556 U.S. at 680-81 (quoting *Twombly,* 550 U.S. at 555). Therefore, Defendants respectfully request that the Court dismiss Plaintiff's RA and ADA claims as Plaintiff does not have sufficient evidence to demonstrate that he was discriminated against because of his disability.

## VI. IN THE EVENT THAT PLAINTIFF ESTABLISHES A VIOLATION OF EITHER SECTION 504 OF THE REHABILITATION ACT OR THE AMERICANS WITH DISABILITIES ACT, PLAINTIFF CANNOT ESTABLISH A REASONABLE ACCOMMODATION CLAIM.

As stated above, Plaintiff must demonstrate that he was (1) a person with a disability as defined by statute; (2) otherwise qualified for the benefit in question; and (3) excluded from the benefit due to discrimination based upon disability. *Randolph,*

170 F.3d at 858.   As an affirmative defense, Defendants may demonstrate that a *requested* accommodation would constitute a substantial alteration in Defendants' programs.  *See id; see also Gorman,* 152 F.3d at 912.  Plaintiff bears the burden of proof on the reasonableness and necessity of the requested accommodation.  *See AP ex rel. Peterson*, 538 F. Supp. 2d at 1141.  If Plaintiff can establish the necessity for the requested accommodation, the Defendants then bear the burden to prove that the accommodation fundamentally alter the program or place an undue burden on DHS. *Gorman,* 152 F.3d at 912.  First, Plaintiff did not plead any facts in his Complaint to indicate that he requested any accommodation to Defendants DHS or Jesson.  Even if Plaintiff made a request for an accommodation to HCHS, that request cannot, as a matter of law, mean DHS or the Commissioner failed to make a reasonable accommodation. And second, to the extent that this Court views Plaintiff's requested accommodation made during the administrative hearing as sufficient notice, that request was not reasonable.

### A.    Plaintiff's Claim That He Requested A Reasonable Accommodation Is Without Merit.

Before a reasonable accommodation can be made, Plaintiff must first make a specific request to the relevant entity.  *See* 29 C.F.R. § 1630.  Generally, the county or state agency must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation, and public entities *are not required to*

*guess* at what accommodations they should provide.   *See Randolph*, 170 F.3d at 858;

*see also AP ex rel. Peterson*, 538 F. Supp. 2d 1125.[13]

Here, the Complaint does not indicate that any specific request for an

accommodation was made to HCHS, let alone DHS.[14]   As stated above, DHS cannot be

held vicariously liable for any actions, or alleged inactions taken by HCHS.   *See Clos*,

2007 WL 3046229.   There is no evidence in Plaintiff's Complaint to indicate that he

made a request for a reasonable accommodation to DHS.   Without a specific request,

DHS cannot be expected to *guess* at what accommodation it should provide Plaintiff.

*See Randolph*, 170 F.3d at 858.

Plaintiff's first request for an accommodation occurred when he appealed his

denial of MSA shelter needy allowance to the HSJ.   Compl. ¶ 44.   But, this is the point

where Plaintiff was appealing the denial of benefits based on an alleged ADA violation.

---

[13] Other circuits have also placed an affirmative duty for plaintiffs to request a reasonable accommodation.   *See e.g., Wood v. Pres. and Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1222 (11th Cir. 1992) (holding that a student was required to demonstrate that she made specific request for accommodation to prevail on ADA claim against the defendant); *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (finding that duty to provide reasonable accommodation is not "triggered unless a specific demand for an accommodation has been made."); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 461 (6th Cir. 1997) (same).

[14] Plaintiff made no specific request to HCHS prior to the Human Services Hearing. Plaintiff's communications with HCHS only indicate that he believed that he was entitled to MSA shelter needy benefits because of his status as disabled for SSA purposes. *See* Ex. B pp. 4, 8-9.   None of Plaintiff's prior communications with HCHS satisfy his burden that he make a specific request for an accommodation.   Moreover, even if the Court finds that these communications serve as a request for an accommodation, these communications were not with the state Defendants, and they must be dismissed. *See Clos*, 2007 WL 3046229.

Plaintiff needed to make his request for an accommodation before he appealed based on a denial of an accommodation.  *See generally* 29 C.F.R. § 1630.

> **B.**   **Any Accommodation Requested By Plaintiff Will Necessitate A Substantial Alteration To Defendants Program And, Therefore, Is Not Reasonable.**

For an accommodation to be reasonable, it must not impose an undue financial or administrative burden or necessitate a substantial alteration in Defendants' programs.[15] *See Alexander v. Choate*, 469 U.S. 287, 300 (1985).  Defendants are not obligated to substantially modify their programs by significantly lowering admission standards in order to accommodate an individual with a disability.  *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979); *see e.g., Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994) (finding that "[w]aiving an essential eligibility standard would constitute a fundamental alteration" in the program).  If Defendants could have reasonably believed that a fundamental alteration of their program would occur, then Defendants are not obligated to accommodate Plaintiff.  *See AP ex rel. Peterson*, 538 F. Supp. 2d at 1147 (finding that the defendant was not deliberately indifferent to the plaintiff's requested accommodation because training staff to administer glucagon injections would fundamentally alter the defendants program).

Here, Plaintiff indicates that his requested accommodation would be for Defendants to modify "their policies or practices, either so that the PCA services

---

[15]   An accommodation would not be considered reasonable if it would also "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

assessment requirement could be deemed satisfied or so that the risk of bodily harm or severe pain from the assessment process could be eliminated." Compl. ¶ 62. As indicated above, requiring that an assessment *must* occur before an individual is deemed eligible for PCA services is an "essential element" to the PCA statute. *See* Minn. Stat. § 256B.0659, subd. 4. Asking Defendants to ignore this criteria would require Defendants to ignore their statutory duty to uphold the criteria set in place for PCA services and require the state to pay a benefit to an individual when the state has never assessed whether that individual is in fact entitled to benefits. As was the case in *Pottgen*, waiving an essential eligibility standard, the need for an assessment, constitutes a fundamental alteration in HCHS and DHS's programs. 40 F.3d at 930. Moreover, in adopting the HSJ's decision, the Commissioner already weighed Plaintiff's requested accommodation and indicated that reasonable accommodations could be made, "when conducting a PCA assessment," but that the ADA did "not negate the requirements set forth in law for a MSA shelter needy allowance or PCA assessments." Ex. A. Concl. ¶ 10. Therefore, Plaintiff is not entitled to his requested accommodation as it would constitute a fundamental alteration of Defendants' programs.

## VII. PLAINTIFF'S 42 U.S.C. SECTION 1983 CLAIM FOR DUE PROCESS VIOLATIONS SHOULD BE DISMISSED.

Plaintiff alleges that the "actions and inactions of Defendants had the effect of denying Plaintiff adequate notice and a meaningful opportunity to be heard." Compl. ¶ 74. This claim is not actionable.

The due process clauses of the U.S. Constitution and the Minnesota Constitution protect against the deprivation of life, liberty, or property without due process of law. U.S. Const. Amend. XIV; Minn. Const. art. I, § 7.   To state a procedural due process claim, Plaintiff must allege that he has a constitutionally protected interest, and that he was *deprived* of that interest without due process of law.   *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).

To the extent that Plaintiff's claims implicate procedural due process, a procedural due process claim is analyzed using a three part balancing test.   *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).   Under this test, a court considers whether the process adequately balances:  (1) the private interest; (2) the risk that the process will result in an erroneous deprivation of the private interest and the probable value of additional or substitute procedural safeguards; and (3) the State's interest.  *Id.*

Moreover, while state statutes and regulations may give rise to constitutionally required procedural protections in certain circumstances, they "cannot dictate what procedural protections must attend a liberty interest - even a state created one." *Swipies v. Kofka*, 419 F.3d 709, 716 (8th Cir. 2005).   The "essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."   *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted); *see also Lindner v. State of Neb., Dep't of Health & Human Servs. Sys.*, 12 F. App'x 429, 431 (8th Cir. 2001) (finding that appellant received notice and was afforded an opportunity to be heard).

Here, Plaintiff's allegations confirm that he received notice and an opportunity to be heard.   Compl. ¶¶ 44-46.   Therefore, as Plaintiff was afforded notice and an opportunity to be heard, his claim must fail.

## VIII.   PLAINTIFF FAILED TO STATE AN EQUAL PROTECTION CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff argues that Defendants treat him, or individuals with disabilities "who are in danger of harm from the PCA assessment process," differently than other MSA recipients.  Compl. ¶ 77.  This claim is not actionable.

The Fourteenth Amendment provides in relevant part that no state shall "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV. To succeed on an equal protection claim, a claimant must prove that he has been treated differently from other *similarly situated individuals*, either by operation of state law or regulation, or by a decision by a state official.  *See Bogren v. Minn.*, 236 F.3d 399, 408 (8th Cir. 2000) ("In general, the equal protection clause requires that state actors treat similarly situated people alike.") *cert. denied*, 534 U.S. 816, (2001) (citing *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995)). The first step in an equal protection case is to determine whether Plaintiff has demonstrated that he is treated differently than others who are similarly situated to him. *See Klinger*, 31 F.3d at 731 (citation omitted).   Dissimilar treatment of dissimilarly situated persons does not violate equal protection.  *Id.* (citation omitted).

First, the requirement that an individual be PCA eligible is not the only way that an individual may receive MSA shelter needy allowance.  As stated above, an individual

is eligible if he is below the age of 65, qualifies as shelter needy and meets either of the following *three* criteria: (1) relocating from an institution, or an adult mental health residential treatment; (2) "eligible for the self-directed supports option as defined under section 256B.0657, subdivision 2;" or (3) is a home and community-based waiver recipient. Minn. Stat. § 256D.44, subd. 5(f)(1). Other MSA recipients may have been eligible if they were home and community-based waiver recipients or were relocating from an institution or an adult mental health residential treatment. Therefore, Plaintiff's treatment as compared to these individuals is inappropriate because dissimilar treatment of dissimilarly situated persons does not violate equal protection. *See Klinger*, 31 F.3d at 731.

And second, Plaintiff cannot allege that he is treated differently than MSA recipients who were eligible for self-directed support options because he had to undergo a PCA Assessment. As stated above, one has to be eligible for PCA services to be considered eligible for self-directed support options. Regardless of an individual's ability to perform ADLs – eating, bathing, dressing, grooming, toileting, positioning, transferring, and mobility – the individual seeking eligibility for PCA services *must* complete a PCA assessment. Minn. Stat. § 256B.0659, subd. 4(a). Therefore, Plaintiff is not treated differently than other disabled individuals.

## IX.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT ACTIONABLE.

Plaintiff argues that Defendants violate both Minnesota Statutes sections 256D.395 and 256D.405, subdivision 1a. Compl. ¶¶ 72-73. The Eleventh Amendment precludes a federal court from ordering a state, its agencies and officials, to

conform its conduct to state law.  *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *see also Treleven v. Univ. of Minn.,* 73 F.3d 816, 819 n.4 (8th Cir.1996).  Although a state statute may create rights and duties under state law, it "cannot be used to definitively establish rights and duties under federal law."  *Randolph*, 170 F.3d at 859 (finding that Missouri Statute § 476.750 did not establish liability against the Department of Corrections).  A state may only waive its immunity through "the most express language" or other "overwhelming implications from the text as will leave no room for any other reasonable construction."  *See Welch v. Tex. Dep't of Hwys. & Pub. Transp.,* 483 U.S. 468, 472 (1987); *see also Santee Sioux Tribe of Neb. v. State of Neb.*, 121 F.3d 427, 430-31 (8th Cir. 1997) ("State's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity, because to waive Eleventh Amendment immunity, the state must specify an intent to subject itself to federal court jurisdiction.").

Here, Commissioner Jesson in her official capacity and DHS are immune from suit under the Eleventh Amendment.  *See Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968-69 (8th Cir. 2000) (barring Minnesota Human Rights Act claim against state college on Eleventh Amendment grounds); *see also Larson v. Indep. Sch. Dist. No. 316*, No. 02-3611, 2003 WL 21402594, at *9 (D. Minn. Jun. 10, 2003) (dismissing state law claims of negligent supervision, negligent training, and Minnesota Human Rights Act violations against state agency and its officials as barred by the Eleventh Amendment). Congress did not abrogate, and the Defendants have not waived, their Eleventh Amendment immunity from this state law claim.  Minn. Stat. § 1.05 (2012) (waiving

Eleventh Amendment immunity only for certain types of claims not presented here); *Hoeffner v. Univ. of Minn.,* 948 F. Supp. 1380, 1383, 1391-93 (D. Minn. 1996); *DeGidio v. Perpich,* 612 F. Supp. 1383, 1389 (D. Minn. 1985).   Therefore, Plaintiff's statutory claims against Commissioner Jesson in her official capacity and DHS must be dismissed as barred under the Eleventh Amendment.

Furthermore, should the Court dismiss Plaintiff's federal law claims against Defendants, the Court need not accept supplemental jurisdiction over Plaintiff's state law claims.   *See Gibson v. Weber*, 431 F.3d 339, 342 (8th Cir. 2005) (noting that Congress unambiguously granted district courts discretion to dismiss supplemental state law claims when all federal claims have been dismissed).

## CONCLUSION

For the forgoing reasons, Defendants respectfully ask this Court to dismiss Plaintiff's Complaint with prejudice.

Dated:  March 10, 2014.                 OFFICE OF THE ATTORNEY GENERAL
                                        State of Minnesota

                                        **s/ Uzodima Franklin Aba-Onu**
                                        UZODIMA FRANKLIN ABA-ONU
                                        Assistant Attorney General

                                        Atty. Reg. No. 0391002
                                        445 Minnesota Street, Suite 1100
                                        St. Paul, Minnesota 55101-2128
                                        (651) 757-1398 (Voice)
                                        (651) 296-1410 (TTY)
                                        frank.aba-onu@ag.state.mn.us

                                        *Attorney For Defendants Minnesota*
                                        *Department Of Human Services, Lucinda*
                                        *Jesson, Commissioner Of Minnesota*
                                        *Department Of Human Services*