# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIC WONG, | Case No. <u>0:13-cv-03378-DWF-JSM</u> |
| *Plaintiff,* | |
| v. | |
| MINNESOTA DEPARTMENT OF HUMAN SERVICES; | |
| LUCINDA JESSON, in her capacity as Commissioner of the Minnesota Department of Human Services; | **PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| HENNEPIN COUNTY HUMAN SERVICES AND PUBLIC HEALTH DEPARTMENT; and | |
| REX A. HOLZEMER, in his capacity as Director of the Hennepin County Human Services and Public Health Department, | |
| *Defendants.* | |

Plaintiff Eric Wong respectfully submits this consolidated response in opposition to the Defendants' motions to dismiss.

## ARGUMENT

### I.  <u>Legal Standard</u>.

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). "The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright et al., Federal Practice and Procedure § 1356 (3d ed. 2004).

Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007). All well-pleaded facts must be viewed in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). On the other hand, the plaintiff must plead specific facts, not conclusory allegations, to avoid dismissal. *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-

> ity, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57, 570).

The Court's analysis is generally limited to the facts stated in the complaint and the documents either attached to or incorporated in the complaint, but courts may also consider matters of which they may take judicial notice." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).

Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment. *Schneider v. California DOC*, 151 F.3d 1194, 1196 (9th Cir. 1998). "Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Wright and Miller*, Federal Practice and Procedure, vol. 5A 1357.

## II. The Eleventh Amendment *Does Not* Bar Mr. Wong's Claims Against the State Defendants.

The State Defendants' contention that Mr. Wong's claims are barred by the Eleventh Amendment[1] is incorrect for three reasons: (1) Mr. Wong alleges violations of Section 504 of the Rehabilitation Act, which requires states receiving federal funding to waive their sovereign immunity; (2) should the Court reach the question, Title II, where it requires that public services be

---

[1] (Dkt. 18, at 10–13.)

made to accessible to individuals with disabilities, is a valid exercise of Congress' authority pursuant to Section Five of the Fourteenth Amendment; and (3) as every appellate court to consider the question has determined, the requirements of Title II, Section 504 and § 1983 are enforceable in a suit for injunctive relief pursuant to the *Ex Parte Young* doctrine.

### A.   Sovereign Immunity Does not Bar Mr. Wong's § 504 Rehabilitation Act Claim

The Eighth Circuit's decision in *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000), and its subsequent decision in *Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003), both defeat the State Defendants' assertion of sovereign immunity with respect to Mr. Wong's § 504 claim. "The Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504." *Jim C.*, 235 F.3d at 1081; *see also* 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

Mr. Wong's complaint alleges that the DHS "is the recipient and administrator of federal financial assistance" including "federal funds from the U.S. Department of Agriculture for the SNAP food stamp program" and "federal funds from the U.S. Department of Health and Human Services for Medical Assistance." (Compl., at ¶9.) The State Defendants do not challenge the sufficiency of these allegations. By accepting federal funds, the DHS waived

its right to assert a sovereign immunity defense to claims brought it against them under section 504 of the Rehabilitation Act. *See Jim C.*, 235 F.3d at 1081; *see also Nebraska*, 345 F.3d at 598. The State Defendants' sovereign immunity defense fails for this reason alone.

### B.  The Court is Obligated to Defer the Question of Sovereign Immunity as it Relates to Mr. Wong's Title II Claim Until it Decides the Merits of the Claim

To the extent that the State Defendants seek to dismiss Mr. Wong's Title II claim on the grounds of sovereign immunity, the request should be denied without prejudice until the Court reaches the merits of the Title II claim. Federal courts are instructed to avoid reaching constitutional issues wherever possible. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Should Mr. Wong's Title II claim fail on the merits, the issue of the State Defendants' potential Eleventh Amendment immunity would become moot. *Buchanan v. Maine*, 469 F.3d 158, 172 (1st Cir. 2006). Indeed, the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), sets forth a step-by-step guideline for deciding Title II sovereign immunity issues. As the First Circuit put it, "Under *Georgia*, the court must determine in the first instance, on a claim-by-claim basis, which aspects of the State's alleged conduct violated Title II. If the State's conduct does not violate Title II, the court does not proceed to the next step in the analysis. The claim ends." *Buchanan*, 469 F.3d at 172–73. The Title II sovereign immunity issue is premature until the Court decides the merits of Mr. Wong's Title II claim.

**C.     The Requirements of 42 U.S.C. § 1983, Title II and § 504 are Enforceable in a Suit for Injunctive Relief Pursuant to the *Ex Parte Young* Doctrine.**

Mr. Wong's claims against Commissioner Jesson in her official capacity for prospective injunctive relief are not barred by the Eleventh Amendment. The State Defendants appear to acknowledge as much. (*See* Dkt. 18, at n.9). An individual may sue a state official in his or her official capacity to obtain prospective relief, provided that "such officer has some connection" with enforcing the law under which prospective relief is sought. *See Reprod. Health Serv. Of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. 123, 161 (1908)); *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 2005) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984)). The State Defendants do not contest the fact that Mr. Wong's complaint seeks prospective injunctive relief or that Commissioner Jesson is charged with enforcing the MSA statutes. (*See generally* Dkt. 18, at 10–11.) Sovereign immunity is not a defense to Mr. Wong's § 1983, Title II or § 504 demands for prospective injunctive relief.

**III.    This Court Has Supplemental Jurisdiction Over Mr. Wong's Appeal of the October 30, 2013 DHS Administrative Decision Under *Chicago v. International College of Surgeons*, 522 U.S. 156 (1997).**

Both sets of Defendants assert that the Court lacks jurisdiction to hear Mr. Wong's appeal from the October 30, 2013 administrative decision. (Dkt. 18, at 12–13; Dkt. 25, at 3.) Yet, in *Chicago v. International College of Sur-*

*geons*, 522 U.S. 156 (1997), the Supreme Court squarely addressed this issue and ruled that federal district courts may exercise supplemental jurisdiction over claims requiring review of state or local administrative decisions. *Id.* at 169 ("There is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative decision."). Defendants do not discuss or attempt to distinguish *Chicago*. (*See generally* Dkt. 18, at 12–13; Dkt. 25, at 3.)

Instead, Defendants cite to *Wilson v. Dryden*, 169 F. Supp. 2d 1010 (D. Minn. 2001), which is readily distinguishable from *Chicago*. In *Wilson*, a *pro se* litigant brought her appeal of a state administrative decision in federal court without asserting any federal claims. This procedure, of course, did not establish any basis for federal jurisdiction. *Wilson*, 169 F. Supp. 2d at 1012–13. As the court in *Wilson* noted, an action cannot be sustained in federal court with "neither federal question nor diversity jurisdiction." *Id.* at 1012.

Here, unlike the plaintiff in *Wilson*, Mr. Wong has asserted federal claims. Mr. Wong's federal claims establish a basis for federal jurisdiction. (*See, e.g.,* Compl. at ¶¶56–77.) This Court may exercise supplemental juris-diction over Mr. Wong's appeal of the October 30, 2013 administrative deci-sion if the requirements of 28 U.S.C. § 1367 are satisfied.

28 U.S.C. § 1367(a) confers district courts with supplemental jurisdic-tion over state claims that are so related to federal claims that "they form part of the same case or controversy under Article III of the United States Constitution." *Id.* This requirement has been interpreted to be satisfied if

there is at least a "loose factual connection" between the federal and state claims. *Moubry v. Independent Sch. Dist. No. 696*, 951 F. Supp. 867, 889 (D. Minn. 1996). If a court concludes that the requirements of 28 U.S.C. § 1367(a) are satisfied, it is obligated to exercise supplemental jurisdiction, absent a defined exception. *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994).

The requirements of 28 U.S.C. § 1367(a) are satisfied in this case. Mr. Wong's federal claims[2] arise out of the same common nucleus of fact as his appeal of the October 30, 2013 administrative decision. The decision of the Human Service Judge, for example, specifically referenced Mr. Wong's arguments under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (Dkt. 1-1, at ¶ 10.) Further, Mr. Wong's equal protection, due process and Rehabilitation Act claims all arise from and relate to Defendants' denial of the MSA "shelter needy" allowance to Mr. Wong—which is the exact issue at the heart of Mr. Wong's appeal of the October 30, 2013 administrative decision. For their part, the Defendants do not discuss whether the requirements of 28 U.S.C. § 1367(a) are satisfied.

Absent exceptions not relevant here, if the requirements of 28 U.S.C. § 1367(a) are satisfied, then the Court must exercise jurisdiction over Mr.

---

[2] Violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; Violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 706 & 794; Violations of the Fourteenth Amendment of the U.S. Constitution—Due Process, 42 U.S.C. § 1983; and Violations of the Fourteenth Amendment of the U.S. Constitution—Equal Protection, 42 U.S.C. § 1983.

Wong's appeal of the October 30, 2013 administrative decision.[3] *McLaurin v. Prater*, 30 F.3d 982, 984–85 (8th Cir. 1994). Notably, Defendants do not argue that Mr. Wong's administrative appeal "raises a novel or complex issue of State law," that it "substantially predominates over the claim or claims over which the district court has original jurisdiction," or that there are "other compelling reasons" to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *see also generally* Dkt. 18; Dkt. 25. Nor is there any apparent reason why one of the exceptions would be triggered. "In the absence of the circumstances described in subsections (b) and (c), § 1367(a) requires the district court to accept supplemental jurisdiction" over state law claims. *McLaurin*, 30 F.3d at 985.

It bears mentioning that nothing in *Wilson* suggests that the language of Minn. Stat. § 256.045, subd. 7, confers Minnesota state courts with exclusive jurisdiction over appeals of DHS Commissioner orders. Further, nothing in the language of Minn. Stat. § 256.045 subd. 7, purports to confer exclusive jurisdiction on Minnesota state courts. More fundamentally, allowing states to override Constitutional grants of federal jurisdiction would constitute a sea-change in the principles of federalism.

## IV.   The Defendants' Issue Preclusion Arguments Fail.

Both sets of Defendants argue that preclusion bars Mr. Wong's claims under the ADA. In addition, the County Defendants argue that Mr. Wong's claim under § 504 of the Rehabilitation Act is similarly barred. The Defend-

---

[3] 28 U.S.C. § 1367(b) is inapplicable here because diversity jurisdiction is inapplicable.

ants' preclusion arguments are unavailing because the elements necessary for preclusion are not present in this case.

Defendants vary in the terminology they apply to their preclusion arguments, but their arguments are ultimately the same. HCHS argues that collateral estoppel, also known as issue preclusion, bars Mr. Wong's claims insofar as they would ostensibly relitigate issues previously decided in the October 30, 2013 administrative decision, while the DHS uses the terminology of claim preclusion. (Dkt. 18, at 13–14; Dkt. 25, at 3–4.) However, both defendants agree that the general standard of res judicata is applicable. *Id.*

Mr. Wong generally agrees with the DHS' statement of the legal standard applicable to claim preclusion. Claim preclusion is appropriate only where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Semler v. Klang*, 603 F. Supp. 2d 1211, 1224 (D. Minn. 2009). Issue preclusion under Minnesota law operates very similarly, and is appropriate only where "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066–67 (8th Cir. 1997) (quoting *Willems v. Commissioner of Pub. Safety*, 333 N.W. 2d 619, 621 (Minn. 1983)). Minnesota law determines whether

either claim or issue preclusion applies. *Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir. 1995). However, in Minnesota, neither claim nor issue preclusion is rigidly applied; rather, it is a flexible doctrine, with a focus on whether its application would work an injustice on the party against whom preclusion is urged. *Id.* (citing *Johnson v. Consolidated Freightways, Inc.*, 420 N.W. 2d 608, 613–14 (Minn. 1988)).

Defendants' preclusion arguments rest on a faulty premise, namely, that there is a "final judgment on the merits." Both Defendants argue as though Mr. Wong did not appeal the October 30, 2013 administrative decision, yet the fifth claim asserted in Mr. Wong's complaint is a request for judicial review of the October 30, 2013 administrative decision. Aside from the Defendants' mistaken jurisdictional argument—addressed by Mr. Wong in Section III, *supra*—the Defendants do not argue that Mr. Wong's appeal of the administrative decision is otherwise defective. Thus, since this Court has the jurisdiction and authority to decide the substance of Mr. Wong's appeal from the administrative decision, there is no "final judgment on the merits" which could preclude the consideration of Mr. Wong's ADA and Rehabilitation Act claims.

The second false premise underlying Defendants' arguments is their assumption that there was a "full and fair opportunity to litigate" on any issues sufficient to preclude any elements of Mr. Wong's ADA and Rehabilitation Act claims. Such an opportunity is typified by *Alexander v. Pathfinder*, 91 F.3d 59 (8th Cir. 1996), which the DHS cites as being ostensibly analogous

to the instant case. But *Pathfinder*—where the finding of an "adequate opportunity to litigate" was based upon "a proceeding that lasted six days and generated 1,400 pages of transcript and voluminous exhibits" and specific findings of fact and law regarding the extent of the plaintiff's disability and the unreasonable impact that accommodating him would comprise—is extremely unlike this case. *Pathfinder*, 91 F.3d at 62–63.

There simply are not sufficient findings of fact or law in the administrative decision to preclude Mr. Wong's ADA or Rehabilitation Act claims. For instance, among other things, the October 30, 2013 administrative decision did not make any findings of fact regarding whether a PCA services assessment was physical in nature, or whether Mr. Wong's disability rendered a PCA services assessment dangerous to him. (*See* Dkt. 19-1, Ex. A., at 2–3.) And the only conclusions of law that could possibly bear upon Mr. Wong's ADA and Rehabilitation Act claims are the conclusions that "reasonable accommodations can be made, if needed, when conducting a PCA assessment" and the erroneous conclusion that state program requirements had blanket supremacy over federal statutory law: "Title II of the Americans with Disabilities Act does not negate the requirements set forth in law for a MSA shelter needy allowance or PCA assessments."[4] (Dkt. 19-1, Ex. A., at 4.) The decision

---

[4] The conclusory statement that the ADA cannot negate the program requirements established by Minnesota state law is flatly wrong, as under the Supremacy Clause, a state statute is preempted to the extent it conflicts with federal law. *See* U.S. Const. Art. VI, Cl. 2. Both federal and state courts generally recognize that federal disability laws preempt state statutes to the extent that they conflict with federal mandates. *See, e.g., Robert M. v. Benton,*

notably did not contain any conclusions of law regarding whether Mr. Wong was disabled under the meaning of the ADA or the Rehabilitation Act, whether a reasonable accommodation in a PCA assessment was necessary in the case of Mr. Wong, or whether the strict application of state program requirements to Mr. Wong *in particular* constituted discrimination against Mr. Wong on the basis of his disability. These meager findings of fact and law are not at all comparable to the voluminous administrative record and findings at issue in *Pathfinder*, and are not sufficient for the Court to decide *any* factual or legal element of Mr. Wong's ADA or Rehabilitation Act claims. *See* 91 F.3d at 62–63.

The inappropriateness of preclusion is shown in stark relief by the nature of Mr. Wong's appeal from the administrative decision. Where, as here, the appeal of an administrative decision is taken under Minn. Stat. § 256.045, the standard of review is not merely on the record as it existed before the administrative forum; rather, this Court may receive new or additional evidence where "necessary for a more equitable disposition of the appeal," so long as the evidence bears upon facts in existence at the time of the administrative decision. Minn. Stat § 256.045, subd. 8; *Matter of Kindt*, 542 N.W. 2d 391 (Minn. Ct. App. 1996) (cited by *Johnson v. Minn. Dept. of Human Servs.*, 565 N.W. 2d 453, 457 (Minn. 1997)). Thus, expanding the record where necessary—as will certainly be necessary, given the meager findings contained in the administrative decision—is explicitly contemplated as a

---

634 F.2d 1139, 1142 & n.11 (8th Cir. 1980) (state laws must yield to the extent they conflict with federal Individuals with Disabilities Education Act).

part of appeal proceedings. Giving preclusive effect to a decision which is not only on appeal, but in which the appellate procedure involves receiving new or additional evidence, would work a manifest injustice against Mr. Wong, and is thus contrary to Minnesota's law of preclusion. *See Johnson*, 420 N.W. 2d at 613–14 (preclusion inquiry is flexible and focuses on injustice).

## V.   Mr. Wong's Complaint States Claims for Relief Under § 504 of the Rehabilitation Act and Title II of the ADA.

Mr. Wong's Complaint states claims for relief under § 504 of the Rehabilitation Act and Title II of the ADA. For purposes of this opposition, Mr. Wong does not contest the Defendants' assertion that the Title II of the ADA and § 504 of the Rehabilitation Act are "similar in substance" and that "cases interpreting either are applicable and interchangeable." (Dkt. 18, at n.11) (citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)). To state a claim under Title II of the ADA, Mr. Wong must allege that (1) he is a person with a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability. *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999). Mr. Wong's complaint exhaustively satisfies these requirements. The standard for stating a claim under § 504 of the Rehabilitation Act is substantially similar. *See Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999).

*First*, Mr. Wong alleges that he is a person with a disability. For example, he alleges that he suffers from "Ehlers-Danlos syndrome, a rare and disabling genetic condition typified by joint instability and chronic musculoskeletal pain." (Compl., at ¶8.) He alleges frequent dislocations of his

"shoulders, elbows, hips, knees, and other joints" and being "substantially limited in several major life activities, including but not limited to walking, standing, and working." (*Id.*) He further alleges "faint[ing] while performing tasks that require him to stand upright", "low nutrient absorption" and "several non-overlapping medically-necessary special dietary needs." (*Id.*) Mr. Wong alleges that he has been evaluated by multiple medical doctors, who have confirmed Mr. Wong's disability. (*Id.*, at ¶¶33, 39, 42 and 44.) Finally, for the past two years Mr. Wong has been receiving Supplement Security Income from the federal government on the basis of his disability. (*Id.,* at ¶2.) The Defendants do not appear to challenge the sufficiency of his allegations as to the first element of an ADA claim.

*Second*, Mr. Wong alleges that—but for the Defendants' insistence that Mr. Wong undergo a PCA services assessment—he meets all of the essential eligibility requirements of the MSA "shelter needy" status and its corresponding benefits. (Compl., at ¶58.) Mr. Wong's allegation is not challenged by the Defendants and is supported by the Human Services Judge's order, which found that Mr. Wong "meets all other requirements" for "shelter needy" assistance other than the PCA services assessment. (*See* Dkt. 1–1, at 3 ¶5.)

*Third*, Mr. Wong alleges that the Defendants have excluded him from "shelter needy" assistance due to discrimination based upon his disability by insisting that he undergo an in-person PCA assessment. Specifically, Mr. Wong alleges that his rare and disabling pre-existing medical condition gives rise to a credible fear that an in-person PCA assessment will result in bodily

harm and/or severe pain. This fear is grounded in Mr. Wong's doctors' rec-ommendations that Mr. Wong not undergo such assessments, Mr. Wong's prior life-threatening experiences with in-person assessments, and the fact that the PCA assessor will not be a licensed medical professional who is fa-miliar with Mr. Wong's rare and disabling condition. The Defendants are preventing Mr. Wong from obtaining "shelter needy" assistance without put-ting his health and safety at risk.

In short, Mr. Wong's complaint states a claim under Title II of the ADA and § 504 of the Rehabilitation Act. Further, the Defendants' specific chal-lenges to these claims lack merit.

## A.    The Defendants Misstate the "Deliberate Indifference" Standard and Misunderstand its Role in This Case

Both sets of Defendants ask this Court to apply the "deliberate indiffer-ence" standard in deciding whether to dismiss Mr. Wong's claims. They as-sert that the "deliberate indifference" standard requires a showing that a defendant has actual knowledge that its actions will violate a plaintiff's rights or that a violation is the "plainly obvious consequence" of the defend-ant's action. The Defendants misstate the "deliberate indifference" standard and misunderstand its application to this case. Further, Mr. Wong's com-plaint states a claim of deliberate indifference.

### 1.    The Defendants misstate the "deliberate indiffer-ence" standard.

In 2011, the Eighth Circuit held that a plaintiff can obtain compensato-ry damages under Section 504 where the defendant acted with "deliberate in-

difference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011).[5]  Despite this clear and recent directive from the Eighth Circuit, the Defendants ask this Court to follow an earlier case from this district that imposes a far more stringent test whereby, to establish deliberate indifference, a plaintiff must demonstrate that a violation of a federal right was a "plainly obvious consequence" of the defendant's actions. *A.P. v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1147 (D. Minn. 2008).

The *A.P.* Court, in the absence (at that time) of Eighth Circuit guidance on this issue, set out the following deliberate indifference test:

> [A] plaintiff must show: (1) that the plaintiff requested the accommodation; (2) that it was "plainly obvious that the accommodation was reasonable and necessary;" and (3) if the defendant has raised the undue-burden/fundamental-alteration defense, that it was "plainly obvious" when the plaintiff requested the accommodation that granting it would *not* have created an undue burden on the defendant and would *not* have fundamentally altered its program.

538 F. Supp. 2d at 1147 (emphasis in original).  *A.P.* further explained:  "If the defendant could have reasonably believed that the undue-burden/fundamental-alteration defense would succeed, then the defendant will not be liable for compensatory damages." *Id.*

---

[5] Notably, *Meagley* was decided three years after *A.P.*, but did not cite to, adopt from, or rely upon *A.P.* or its proposed test.  Instead, *Meagley* relied upon the Tenth Circuit's decision in *Barber ex rel Barber v. Colo. Dep't. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009), among others. 639 F.3d at 389–90 & n.4.

*A.P.*'s "plainly obvious consequence" test is irreconcilable with *Meagley*, which explained that intentional discrimination can be "inferred from a defendant's deliberate indifference to the *strong likelihood* that pursuit of its questioned policies will *likely* result in a violation of federally protected rights." *Meagley*, 639 F.3d at 389 (emphasis added) (internal quotation marks omitted) (quoting *Barber*, 562 F.3d at 1228-29). *Meagley* thus requires a strong probability, whereas *A.P.* would suggest the violation was absolutely and easily discovered, seen, or understood.

An additional inconsistency between *A.P's* formulation of deliberate indifference and that in *Meagley* is that, in *A.P.*, the court shifts the burden of proof to the plaintiff to establish that it was "plainly obvious" that defendant's affirmative defenses of undue burden and fundamental alteration would fail. *A.P.*, 538 F. Supp. 2d at 1147. This analysis conflicts with the statutory and regulatory construction of Section 504, and its purpose to remedy "harms resulting from action that discriminate[s] by effect as well as by design." *See Alexander v. Choate*, 469 U.S. 287, 297 (1985).

As the Eighth Circuit has explained:

To prevail on a Rehabilitation Act claim under this section, a plaintiff must establish that she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of an . . . entity receiving federal funds; and (3) was discriminated against based on her disability. A defendant to such a claim is entitled to assert as an affirmative defense that a requested accommodation would constitute an undue burden. "Accommodations are not reasonable if they impose 'undue financial and administrative burdens' or if they require a 'fundamental alteration in the nature of [the] program.'"

*Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999) (internal citations and quotation marks omitted) (quoting *Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 930 (8th Cir. 1994) (quoting *Sch. Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 287 n.17, 94 L. Ed. 2d 307, 107 S. Ct. 1123 (1987))).  Under *A.P.'s* test, however, a plaintiff would be required to disprove the defendant's affirmative defenses, an approach that conflicts with Eighth Circuit precedent holding that the defendant bears the burden of proof on undue burden and fundamental alteration.  *Timothy H.*, 178 F.3d at 971.

Beyond this, the test in *A.P.* eliminates the availability of compensatory damages "[i]f the defendant *could have* reasonably believed" the defense would succeed, suggesting that a disability-discrimination defendant need only claim that it believed the existence of an undue burden or fundamental alteration.  *A.P.*, 538 F. Supp. 2d at 1147 (emphasis added).  In other words, a plaintiff would have to show that the defendant could not have reasonably believed undue burden or fundamental alteration would succeed.  Such an approach is akin to requiring the plaintiff to show that the defendant was acting with animosity or ill will, which has been explicitly rejected by the Eighth Circuit and other courts.  *See Meagley*, 639 F.3d at 389 ("The deliberate indifference standard, unlike some tests for intentional discrimination, 'does not require a showing of personal ill will or animosity toward the disabled person.'") (quoting *Barber*, 562 F.3d at 1228-29); *see also Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994).

The Eighth Circuit in *Meagley v. City of Little Rock* found that a Section 504 plaintiff must show "deliberate indifference" to obtain compensatory damages.  *Meagley*, 639 F.3d at 389.   Adopting the reasoning of the Tenth Circuit, the *Meagley* Court explained:

> The deliberate indifference standard, unlike some tests for intentional discrimination, "does not require a showing of personal ill will or animosity towards the disabled person," but rather can be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."

639 F.3d at 389 (quoting *Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009)).

In *Meagley*, the plaintiff, who had difficulty walking, rented an electric scooter from a public zoo, and while visiting one of the exhibits, tipped over on a bridge because the slope exceeded the maximum permitted under the applicable architectural standard.  *Meagley*, 639 F.3d at 386–87.   The plaintiff sought compensatory damages under Title II of the ADA and the Rehabilitation Act.  *Id.* at 387.   The Eighth Circuit affirmed the District Court's dismissal of the damages claim, finding that the plaintiff could not prove that the zoo had notice that the slope of the bridge was out of compliance, and that, in the absence of such a finding, the plaintiff could not show that the zoo acted with deliberate indifference to the strong likelihood that the slope was in violation of her rights.  *Id.* at 389-90.

Similarly, in the Tenth Circuit case, *Barber*, on which the Eighth Circuit relied in *Meagley*, the court set forth a two-part test to determine delib-

erate indifference for Section 504 damages claims:  (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that . . . likelihood." *Barber*, 562 F.3d at 1229.  The Tenth Circuit adopted this application of the deliberate indifference test from the Ninth Circuit, in *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001) ("Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood.").  *See Barber*, 562 F.3d at 1229.  As to the first element, the *Duvall* court, explained that "[w]hen the plaintiff has alerted the … entity to his need for accommodation (or where the accommodation is obvious, or is required by statute or regulation), the … entity is on notice that an accommodation is required."  *Id.*  To meet the second element of the deliberate indifference test, "a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness."  *Id.* at 1140.

In *Duvall*, an individual with a hearing disability filed suit against Kitsap County and members of the superior court for failing to provide auxiliary aids and services during court proceedings involving the dissolution of his marriage.  *Duvall*, 562 F.3d at 1129–30.  Duvall communicated primarily through writing because he did not use sign language, and relied on lip-reading, hearing aids, and visual cues in one-on-one conversations.  *Id.*  In group conversations, Duvall had extreme difficulty following the conversation because he could not focus on a single speaker to study facial expressions, body language, and lip movement; could not control the pace of the conversation; or necessarily seek a pause from the participants.  *Id.*  During court pro-

ceedings with extensive oral testimony, Duvall could not follow the proceed-ings and requested captioning. *Id.* At the trial, Duvall was not provided cap-tioning; instead, he was provided an assistive listening system and the ability to move around the courtroom to better see speakers, but he found that he could not follow the discussions and ultimately gave up. *Id.* at 1131–32. Du-vall similarly requested, but was not provided, captioning during a post-trial hearing. *Id.* at 1132. The Ninth Circuit reversed the District Court's grant of summary judgment on damages, finding a triable issue that Duvall had made requests, that they were ignored or denied, and that a jury could find that the court's representatives acted with deliberate indifference. *Id.* at 1139–41.

In 2012, the Eleventh Circuit followed suit in *Liese v. Indian River County Hospital District.*, 701 F.3d 334, 344 (11th Cir. 2012). While this case post-dates the Eighth Circuit's *Meagley* decision, its application of the delib-erate indifference test is wholly consistent with *Meagley,* and, like *Duvall*, is particularly instructive to the facts in this case. *Liese*, 701 F.3d at 342–44. *Liese* involved a hospital that allegedly refused a married couple's repeated requests for interpreters during an emergency room visit for chest pain and dizziness and, ultimately, surgery to remove a gallbladder. *Liese*, 701 F.3d at 336, 338–40. The Lieses brought suit under Section 504, and the Eleventh Circuit reversed the grant of summary judgment on the issue of compensato-ry damages, finding the evidence supported knowledge of the requests and a continued failure to provide interpreters. *Id.* at 336.

As the above discussion shows, *Meagley's* formulation of deliberate indifference, premised on and consistent with the test in other federal circuits, provides ample guidance to this Court on the application of the "deliberate indifference" standard. The Court should apply the Eighth Circuit's formulation of the deliberate indifference standard, and not the one advanced by the Defendants.

## 2. The Defendants Misunderstand the Role of the "Deliberate Indifference" Standard in This Case

The role of the "deliberate indifference" standard is to determine whether a plaintiff may recover compensatory damages in a claim brought under Title II of the ADA or § 504 of the Rehabilitation Act. *See Meagley*, 639 F.3d at 390. It is not, as the Defendants appear to suggest, applicable to Mr. Wong's claims for injunctive relief under those statutes. *See id.*

## 3. Mr. Wong's Complaint Alleges Facts That Support a Finding of Deliberate Indifference

Although the "deliberate indifference" issue is premature at this stage of the litigation, Mr. Wong's complaint contains allegations that support a finding of deliberate indifference. Deliberate indifference can be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned polices will likely result in a violation of federally protected rights." *Meagley*, 639 F.3d at 389. Mr. Wong's complaint includes allegations of numerous verbal and written demands to the Defendants in-

forming them of his condition and challenging their denial of the "shelter needy" benefit. He alleges undergoing medical assessments—including an assessment of his dependence in activities of daily living, which is the fundamental analysis performed during the PCA assessment—and informing the Defendants of these assessments. Finally, he alleges that the Defendants were made fully aware of these issues well in advance of and during his administrative appeal.

### B.   The State Defendants' Focus on Vicarious Liability Ignores Mr. Wong's Claims Against the State

Mr. Wong is not seeking to hold the State Defendants vicariously liable for rogue acts of the County Defendants. Instead, he seeks to hold them directly liable for, among other things, excluding Mr. Wong from obtaining "shelter needy" benefits on the basis of his disability through "practices, policies, criteria and/or methods of administration" that subject Mr. Wong to discrimination on the basis of his disability. (*See, e.g.,* Compl. at ¶¶ 63, 69, 74 & 77.) These allegations have support in the Minnesota Supplemental Aid Act itself. *See* Minn. Stat. § 256D.53 (listing the duties of the DHS Commissioner as supervising the administration of Minnesota supplemental aid by county agencies and establishing rules and procedures for carrying out and enforcing the provisions of the Minnesota Supplement Aid Act).

### C.   The Defendants' Arguments on the Merits of Mr. Wong's Allegations Regarding the PCA Assessment are Premature

The Defendants' suggestion that Mr. Wong's concerns regarding the PCA assessment are "misplaced" is premature at this stage of the litigation. Mr. Wong is not required, at the pleading stage, to have "evidence" that the PCA assessment would put him in reasonable apprehension of bodily injury. Instead, Mr. Wong is required to plead facts that, if accepted as true, state a claim for relief. Mr. Wong has alleged that the PCA assessment places him in a well-substantiated fear of harm. This fear is grounded in Mr. Wong's doctors' recommendations that Mr. Wong not undergo such assessments, Mr. Wong's prior life-threatening experiences with in-person assessments, and the fact that the PCA assessment is an in-person assessment conducted by someone who is not a licensed medical professional.

The Defendants' suggestion that the nature of a PCA assessment can be conclusively determined by reference to the Minnesota statutes is baseless. Nothing in the statute precludes a physical component to the assessment. Further, the documents submitted by the Defendants expressly contemplate a physical portion of the assessment. For example, on the PCA Assessment and Service Plan form, the PCA assessor is instructed to "ask for demonstration and document through description of observation" the subject's "overall health condition and ability to function." (Dkt. 19-1, Ex. C. at 27.) The categories of functionality include dressing, grooming/hygiene, bathing, eating, transfers, mobility, positioning and toileting. (*See* Dkt. 19-1, Ex. C.) For someone like Mr. Wong, who experiences spontaneous dislocations, being required to perform such demonstrations would place him in reasonable apprehension of bodily injury.

**VI.    The Defendants' Attempts to Raise Affirmative Defenses is <u>Premature at This Stage of the Litigation</u>.**

Both sets of Defendants argue that Mr. Wong's claim should be barred because he did not request a reasonable accommodation. They also argue that *any* accommodation requested by Mr. Wong would constitute a substantial alteration to the Defendants' program. The Defendants' arguments fail on both grounds.

**A.    The Defendants Fail to Challenge Two of the Three Grounds on Which Mr. Wong Alleges Discrimination, and Fail to Make a Winning Argument on the Ground They Do Challenge**

The Defendants appear to misunderstand the role of requests for accommodation in the context of a disability discrimination claim. Put succinctly, a defendant's refusal to provide a requested reasonable accommodation is one way a plaintiff may prove discrimination on the basis of disability. *See, e.g., Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (noting that a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against her by failing to provide a reasonable accommodation unless she demanded such an accommodation).

Yet, there are other ways to establish discrimination. For example, Title II of the ADA prohibits public entities from "impos[ing] or apply[ing] eligibility criteria that screen out or tend to screen out an individual with a disability … from fully and equally enjoying any service, program, or activity unless such criteria can be shown to be necessary for the provision of the ser-

vice, program, or activity being offered." 28 C.F.R. §§ 35.130(b)(7) & (8). The Defendants leave unchallenged Mr. Wong's allegations of discrimination in this regard. (*See* Compl. at ¶¶ 60–63.) Further, the Defendants' adoption of the Human Services Judge's suggestion that a reasonable accommodation may be provided at the time of assessment—at which point it is too late, and discretion is left in the hands of someone who is unfamiliar with Plaintiff's rare and dangerous condition and not a medical doctor—is a separate ground for establishing discrimination. (*See* Compl. at ¶ 62.)

Finally, and contrary to the Defendants' assertions, Mr. Wong alleged a request (and the Defendants' failure to provide) a reasonable accommodation. For example, Mr. Wong alleged the existence of numerous written and verbal communications with the Defendants regarding his request for PCA eligibility. (Compl. at ¶55.) Further, Mr. Wong perfected this request at the administrative appeal hearing.

### B.   Mr. Wong's Requested Accommodation Would not Require a Substantial Alteration of Any Programs

Mr. Wong's only requested accommodation was that the Defendants rely on medical assessments performed by licensed physicians and/or his preexisting SSI-disability determination for purposes of determining whether he required assistance in activities of daily living. (*See* Dkt. 18, at 20–21.) Far from requiring a substantial alteration of MSA, Mr. Wong's request provides the Defendants with the same information they would ostensibly obtain during a PCA assessment. Further, it bears mentioning that Mr. Wong is not seeking actual PCA services, but only a declaration of eligibility for the PCA

program for purposes of satisfying a sub-requirement of "shelter needy" status.

## VII.   Mr. Wong States a Claim for Relief Under § 1983 for Due Process Violations.

Defendants' arguments that Mr. Wong cannot state a claim for relief based on the denial of his due process rights is based on their simplistic contention that Mr. Wong was "afforded notice and an opportunity to be heard." (Dkt. 18, at 22–23; Dkt. 25, at 6–7.) In fact, as the County Defendants acknowledge, the "essential principle of due process is that a deprivation of life, liberty, or property *be preceded by* notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted, emphasis added). In other words, for the requirements of constitutional procedural due process to be satisfied, it is essential that a *pre-deprivation*, rather than a post-deprivation, remedy is available. Due to the actions of Defendants, Mr. Wong was deprived of the pre-deprivation process that should have been given to him.

As an initial matter, to the extent that Defendants interpret the Complaint to allege any substantive due process claims, Mr. Wong does not intend to prosecute such claims, and limits his due process claims to procedural due process.

As the State Defendants recognize, one type of procedural due process claim arises under a balancing test wherein the court weighs whether the process provided adequately balances: (1) the private interest; (2) the risk

that the process will result in an erroneous deprivation of the private interest and the probable value of additional or substitute procedural safeguards; and (3) the State's interest. *Matthews v. Eldridge*, 424 U.S. 319, 334–45 (1976). But the same case also establishes that the Supreme Court "consistently has held that some form of hearing is required *before* an individual is finally deprived of a property interest," and that the aforementioned balancing test applies to the determination of whether pre-deprivation process is adequate where post-deprivation process is also provided. *Matthews*, 424 U.S. at 333–35 (emphasis added). Another, separate type of procedural due process claim arises where a plaintiff has been deprived of life, liberty, or property by state officials acting pursuant to established state procedure that failed to provide for pre-deprivation process in a situation where such process was possible, practicable, and constitutionally required. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982).

Here, the *Matthews* balancing test is inapplicable because absolutely no pre-deprivation process whatsoever was provided to Mr. Wong. Rather, as Mr. Wong alleged, he applied for the MSA program in August 2011 through the submission of a Combined Application form promulgated by the Minnesota Department of Human Services. (Compl. ¶¶ 35, 72.) Under the relevant statutory and departmental procedures of Defendants, a Combined Application form constitutes the full and complete application for all of the benefits of the MSA and SNAP programs, including MSA "shelter needy" benefits. (Compl. ¶ 72.) These procedures, and related statutes, are intended to serve to shift the responsibility for understanding and determining eligibility for

public-assistance programs away from persons who are indigent or who suffer from disabilities, like Mr. Wong, and onto the relevant state and county authorities. Thus, Mr. Wong *should have* been provided with all necessary verification requests, and the Defendants *should have* either issued all benefits subsumed under the Combined Application banner or issued a written denial within sixty days of Mr. Wong's application—but they did not. (Compl. ¶¶ 53, 54, 72.)

Mr. Wong had an established property interest under state law in the benefits subsumed under the Combined Application, including MSA "shelter needy" benefits, after the passage of sixty days from his initial submission in August 2011 and in the absence of a formal denial. (*Id.* ¶¶ 54, 72.) Mr. Wong's alternative theory similarly establishes that his property interest in the MSA "shelter needy" benefits was established sixty days after his initial Combined Application in August 2011. (*Id.* ¶ 73.) The ultimate purpose of the requirement that Defendants either issue benefits or a written denial within sixty days of submission of a Combined Application is to establish a right to pre-deprivation process—as can be seen in the actual formal denial for the MSA program as a whole later issued to Mr. Wong on April 15, 2013. (*See* Dkt. 19-1, Ex. B, at 9–11.) That form, for instance, informed Mr. Wong of his rights to appeal and the procedures for doing so, and additionally of his right to "keep your benefits until the appeal." *Id.* In other words, the formal verification request and formal denial provisions under Minn. Stat. § 256D.405 Subd. 1 and Minn. Stat. § 256D.395, *would have* given Mr. Wong effective

pre-deprivation process—except that Defendants entirely ignored and acted in contravention of these provisions.

To the extent that Defendants' failure to follow these provisions was established procedure, it was a violation of Mr. Wong's constitutional due process rights because the pre-deprivation procedures were possible, practicable, constitutionally required, and in fact prescribed by state law. *See Logan*, 455 U.S. at 435–36. The allegations in the Complaint therefore establish a viable procedural due process claim against Defendants for their total denial of pre-deprivation process, regardless of the post-deprivation process provided.

Both sets of Defendants erroneously refer to the April 15, 2013 notice of Mr. Wong's removal from the MSA program as a whole, and his subsequent administrative appeal, as notice and an opportunity to respond. Rather, with regard to the MSA "shelter needy" benefits—which are the direct subject of this action—this was merely post-deprivation procedure, since Mr. Wong's entitlement to these benefits was established by law after sixty days had passed since his initial submission of a Combined Application form. In order for Defendants to prove that post-deprivation procedure alone is all the process that is due, they would need to show that the deprivation was unforeseeable, random, unauthorized, and that they provided an adequate post-deprivation remedy pursuant to the *Parratt/Hudson* doctrine. *See Hudson v. Palmer*, 468 U.S. 517, 531–33 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled in part*, *Daniels v. Williams*, 474 U.S. 327 (1986). They cannot and have not done so.

## VIII.   Mr. Wong States a Claim for Relief Under § 1983 for Equal <u>Protection Violations</u>.

Defendants argue that Mr. Wong has failed to state a claim for relief based on their denial of his equal protection rights, but Defendants' contentions are flawed due to their misunderstanding of Mr. Wong's claim. Defendants focus on the threshold requirement that Mr. Wong identify ways in which he is treated differently than others similarly situated to him. *See Klinger v. Dept. of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994); (Dkt. 18, at 23; Dkt. 25, at 8.) However, Mr. Wong has satisfied this requirement under both of the theories identified by Defendants.

Both sets of Defendants argue that Mr. Wong is not treated differently from other MSA recipients seeking "shelter needy" benefits based on eligibility for the self-directed supports option, because they interpret the requirement of a PCA assessment as applying to all such persons. (Dkt. 18, at 24; Dkt. 25, at 9.) Thus, Defendants admit that Mr. Wong is similarly situated to such persons, but argue that Mr. Wong is treated identically to such persons. This rendering ignores that the PCA assessment requirement creates two subclasses of persons seeking "shelter needy" benefits based on eligibility for the self-directed supports option: (1) those persons who can undergo a PCA assessment by untrained personnel who are not licensed to practice medicine without danger or fear of serious bodily harm, and (2) those who cannot because, like Mr. Wong, they have serious disabling medical conditions which make them especially vulnerable to physical harm and require specialized and knowledgeable handling by medical professionals. The standards en-

forced by Defendants treat these two subclasses differently, allowing the first subclass access to "shelter needy" benefits while barring the second subclass from eligibility. Mr. Wong explicitly cited the disparate treatment of the sub-class of persons who are in danger or reasonable and well-substantiated fear of harm from the PCA assessment process in his Complaint, alleging that he was denied the same or even similar opportunities due to his membership in that subclass of persons. (Compl. at ¶ 77.) This is sufficient to state an equal protection claim against both sets of Defendants.

The State Defendants further argue that Mr. Wong is not similarly sit-uated to those individuals who seek or receive "shelter needy" benefits under one of the two criteria options *other* than eligibility for the self-directed sup-ports option, namely relocation from an institution or an adult mental health residential treatment or receipt of home and community-based waiver ser-vices. (Dkt. 18, at 24 (citing Minn. Stat. § 256D.44, subd. 5(f)(1)).) However, the state Defendants wholly fail to articulate any qualities or reasons which would make Mr. Wong dissimilarly situated from these persons. Mr. Wong articulates elements that make him similarly-situated to these persons in his Complaint: namely, they are MSA recipients who are seeking "shelter needy" benefits. (Compl. at ¶ 77.) The Eighth Circuit has stated that "[t]he similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group *for purposes of the challenged government action.*" *Klinger*, 31 F.3d at 731 (emphasis added). The challenged government action here is the denial of "shelter needy" benefits to persons, like Mr. Wong, who are other-wise qualified to receive them. The "shelter needy" benefits program is the

same across all applicants and recipients. Thus, Mr. Wong is indeed similarly situated to other persons who satisfy the fundamental requirements for "shelter needy" benefits other than the criteria options stated above—and the simple fact is that some of these individuals are subjected to the requirement of a PCA assessment, while some are not. This, too, is unequal treatment of similarly-situated persons sufficient to state an equal protection claim against Defendants.

Additionally, Mr. Wong alleges in his Complaint that the only rational basis for the PCA assessment, in the context of the assessment of eligibility for MSA "shelter needy" benefits, is to verify that an applicant has a dependency in one or more activities of daily living, and that the absence of non-harmful alternatives to the PCA assessment requirement is irrational and exclusionary when applied to persons like Mr. Wong, who have been pre-verified by the federal SSA as being dependent in one or more areas of living, and who possess documentation of this fact in the form of multiple opinions by medical doctors. (Compl. at ¶¶ 49, 77.) Defendants have not suggested other rational bases for the application of PCA assessments to some MSA "shelter needy" applicants but not others, they have not suggested any rational basis for the strict application of such a requirement to pre-verified SSA clients, and they have not suggested any rational basis for subjecting a person who does not wish to actually receive PCA services (merely to be declared eligible, as Minn. Stat. § 256D.44, subd. 5 requires only eligibility, not receipt of services) to an assessment designed to determine actual service

provisions. Such defenses, if any, should be presented in Defendants' answers and should not be adjudicated at this stage of the litigation.

## IX. The State Defendants' Attack on Mr. Wong's "State Claims" Fails to Overcome the Fact that Federal Courts May Order States to Conform Their Conduct to Federal Law.

The State Defendants' attacks on Mr. Wong's claims under Minn. Stat. §§ 256D.395 and 256D.405, Subd. 1(a), suffer from a key flaw: Mr. Wong is not asserting claims under those statutes. Instead, the paragraphs of Mr. Wong's complaint cited by the State Defendants are associated with Mr. Wong's claim for violations of the Fourteenth Amendment of the U.S. Constitution under 42 U.S.C. § 1983. As discussed in Section II(C), *supra*, there can be no question that federal courts have the power to order a state official acting in her official capacity to conform her conduct to federal law. One of the cases cited by the State Defendants, *Treleven v. Univ. of Minn.*, 73 F.3d 816 (8th Cir. 1996), illustrates this point well. In *Treleven*, the district court invoked the Eleventh Amendment to dismiss claims for injunctive relief under state law and under 42 U.S.C. § 1983. On appeal, the Eighth Circuit affirmed the district court's dismissal of Treleven's state law claims, but reversed the district court's dismissal of his § 1983 claims, explaining that "*Ex parte Young* recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Id.* at 819. The cases cited by the State Defendants in the body of their argument all relate to state law claims, such as Minnesota Human Rights Act claims, negligent supervision claims and negli-

gent training claims. Unlike the plaintiffs in those suits, Mr. Wong is not asserting a state law claim.

## X.    The County Defendants' Attack on Plaintiff's *Monell* Claims Fails Because Plaintiff Has Alleged All Required Elements.

The County Defendants argue that there can be no municipal liability for Mr. Wong's § 1983 claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), but this line of argument is easily extinguished. As an initial matter, as discussed above, Mr. Wong has established an underlying violation of his constitutional rights to pre-deprivation due process and to equal protection of the law. Further, Mr. Wong clearly alleged multiple unconstitutional policies and/or customs adopted by the County Defendants which caused the denial of MSA "shelter needy" benefits, which are more than sufficient to satisfy the *Monell* standard.

Although the County Defendants argue, without supporting their contention, that "there is nothing in Mr. Wong's complaint to suggest that the Hennepin County Defendants maintain widespread customs or policies of which Plaintiff accuses them," Mr. Wong has made direct allegations on these points. With regard to Mr. Wong's due process claims, Mr. Wong alleges that Defendants: "established a policy and practice of failing to immediately provide application forms upon request"; that they "established a policy and practice of failing to issue … necessary verification requests for the determination of MSA "shelter needy" benefits"; that they "established a policy and practice of failing to determine the eligibility of applicants who submit a Combined Application for the MSA program for MSA "shelter needy" bene-

fits, and failing to either issue such benefits or issue a written denial, within sixty days"; and that they "repeatedly failed to timely respond to Mr. Wong's communications, letters, phone calls, and notices of appeal." (Compl. at ¶¶ 52–55.) Mr. Wong further alleged that these policies and practices, combined with the other actions and inactions of Defendants, "had the effect of denying Plaintiff adequate notice and a meaningful opportunity to be heard." (*Id.* at ¶ 74.)

With regard to Mr. Wong's equal protection claims, Mr. Wong alleges that Defendants: "established a policy and practice of requiring MSA applicants to verify PCA eligibility, despite the redundancy of the PCA assessment for SSI disability recipients"; and that they generally "do not provide individuals with disabilities who are in danger of harm from the PCA assessment process, or who are in reasonable and well-substantiated fear of harm from the PCA assessment process, with the same or even similar opportunities as other MSA recipients." (*Id.* at ¶¶ 51, 77.) Moreover, Mr. Wong clearly alleges that the County Defendants "knew of the unlawful acts … and had the power to remedy them, yet failed to do so," further showing Mr. Wong's intention to prove an unconstitutional custom on the part of the County Defendants. (Compl. at ¶ 87.) Mr. Wong has satisfied all elements of pleading a basis for liability against the County Defendants on his § 1983 claims under *Monell*, and his Complaint directly answers every criticism leveled by the County Defendants.

**XI.    HSPHD is Not Subject to Suit.**

Mr. Wong concedes the County Defendants' argument that HSPHD is not a proper party to his suit and requests leave to join Hennepin County as a party defendant.


Respectfully submitted,

DATED:  March 31, 2014


/s/ Paul Hansmeier
Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801