# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eric Wong,                                    Civil No. 13-3378 (DWF/JSM)

           Plaintiff,

v.                                            **MEMORANDUM**
                                              **OPINION AND ORDER**

Minnesota Department of Human Services;
Lucinda Jesson, in her capacity as Commissioner
of Minnesota Department of Human Services;
Hennepin County Human Services and
Public Health Department; and Rex. A.
Holzemer, in his capacity as Director of
Hennepin County Human Services and
Public Health Department;

           Defendants.

---

Paul R. Hansmeier, Esq., Class Justice PLLC, counsel for Plaintiff.

Uzodima Franklin Aba-Onu, Assistant Attorney General, counsel for Defendants
Minnesota Department of Human Services and Lucinda Jesson, Commissioner of
Minnesota Department of Human Services.

Toni A. Beitz, Senior Assistant County Attorney, and Daniel D. Kaczor, Assistant
County Attorney, counsel for Defendants Hennepin County Human Services and Public
Health Department and Rex A. Holzemer, Director of Hennepin County Human Services
and Public Health Department.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by the Minnesota

Department of Human Services ("DHS") and Lucinda Jesson, Commissioner of

Minnesota Department of Human Services ("the Commissioner") (together, "State

Defendants") (Doc. No. 16); and a Motion to Dismiss brought by Hennepin County Human Services and Public Health Department ("HCHS") and Rex A. Holzemer, Director of HCHS ("Holzemer") (together, "County Defendants") (Doc. No. 22) (collectively "Defendants").  For the reasons set forth below, the Court grants the motions.

## BACKGROUND

DHS is a state agency that provides services for people with disabilities, including a financial support program called Minnesota Supplemental Aid ("MSA").[1]  (Doc. No. 1 ("Compl.") ¶ 9.)  HCHS is a county agency that administers MSA.  (*Id.* ¶ 11.)  Jesson is the Commissioner of Minnesota DHS.  (*Id.* ¶ 10.)  Holzemer is the Director of HCHS. (*Id.* ¶ 12.)

Plaintiff Eric Wong ("Plaintiff") alleges that he is currently, and has been for the past two years, receiving SSI benefits from the federal government on the basis of his disability—Ehlers-Danlos syndrome, a genetic disorder caused by a "defect in the synthesis of collagen" that results in elasticity of joints, blood vessels, and organs.  (*Id.* ¶¶ 2, 8 & Ex. A ("Decision of State Agency on Appeal") at 2.)

---

[1]     The MSA program provides financial assistance for people who receive Social Security Income ("SSI") (or would otherwise be eligible for SSI but whose income is too high) to defray the costs of basic needs not met by SSI, and can cover other costs for "special needs," such as medically necessary diets and housing (or "shelter needy") payments. *See* Minn. Stat. §§ 256D.44, 256D.45.  A person who receives MSA for being "shelter needy" is someone whose housing expenses exceed 40% of his or her gross income.  (*See* Compl. ¶ 22 (citing Minn. Stat. § 256D.44, subd. 5(f)(3)).)

2

Plaintiff began receiving general assistance benefits ("GA") from the State in late 2005, and soon thereafter began the process of seeking SSI.  (Compl. ¶ 32.)  Upon being found eligible for SSI in March 2011, Plaintiff became ineligible to receive GA payments.  (*Id*. ¶ 34.)  Plaintiff alleges that he sought MSA benefits for medically necessary diets and housing assistance and that, in March 2011, HCHS initially denied MSA assistance based on a verbal screening process.  (*Id*.)  Plaintiff further alleges that in August 2011, he was again verbally denied MSA benefits after submitting a written application.  (*Id*. ¶ 35.)  Plaintiff asserts that he sent "multiple written appeals" to HCHS supervisors and that, on August 31, 2012, HCHS reconsidered its position and approved Plaintiff for the special diets benefit, but did not approve the shelter needy benefits.  (*Id*. ¶¶ 35-36.)

Plaintiff alleges that he continued to appeal "the action and inactions of HCHS" and the denial of benefits.  (*Id*. ¶¶ 37-43.)  In April 2013, Plaintiff alleges that Defendants notified him of a reduction in benefits because of a reported increase in his federal benefits; this included completely closing his MSA account.  (*Id*. ¶ 41.)  Plaintiff asserts that he appealed this decision in writing.  (*Id*. ¶¶ 41, 43.)  Plaintiff alleges that HCHS was unresponsive.  (*Id*.)

On July 15, 2013, Plaintiff filed an administrative appeal with DHS because of the alleged unresponsiveness of HCHS and lack of action on his appeal to reinstate MSA benefits.  (*Id*. ¶ 44.)  Plaintiff also requested back payments of his special diets benefits

under MSA and that reasonable accommodations be made in his application for shelter

needy benefits so that a required Personal Care Assistance ("PCA") assessment[2] could be

waived.  (*Id.*)[3]  Two of these issues—the MSA back payments of special diet benefits and

the reinstatement of his MSA case—were resolved before the administrative hearing took

place.  (*Id.* ¶ 45.)

 In his appeal, Plaintiff alleged that the required PCA assessment would pose a

danger to his physical health if given by someone who was not familiar with his rare

genetic disorder.  (*Id.* ¶ 44.)  Plaintiff instead requested that, as a reasonable

accommodation under the Americans with Disabilities Act ("ADA"), other

"documentation of his limitations in major life activities" be accepted in lieu of a PCA

assessment for proof of eligibility for shelter needy benefits.  (Decision of State Agency

on Appeal at 3.)

---

[2]     A PCA assessment is an in-person review and evaluation of a recipient's need for personal care assistance that includes, among other things, documentation of health status, determination of need, evaluation of service effectiveness, and the identification of appropriate services.  (Compl. ¶ 25 (citing Minn. Stat. § 256B.0659, subd. 3a).)

[3]      Eligibility for self-directed supports, a determining criterion for eligibility for shelter needy benefits, rests on five qualifications:  (1) the recipient also receives Medical Assistance; (2) the recipient is eligible for PCA services; (3) the recipient lives in his or her own apartment or home; (4) the recipient is able to establish and manage service providers; and (5) the recipient is not otherwise disqualified from receiving the services by the Commissioner of Minnesota DHS.  (Compl. ¶ 24 (citing Minn. Stat. ¶ 256B.0657 subd. 2).)

On August 22, 2013, Human Services Judge Marion F. Rucker (the "HSJ") held an evidentiary hearing pursuant to Minnesota Statute section 256.045, subdivision 3,[4] addressing the following issue on appeal:  "Whether the County agency correctly denied [Plaintiff's] request for the [MSA] housing allowance on the grounds, he does not meet the eligibility criteria."  (*Id.* at 2.)  At the hearing, Plaintiff entered several exhibits. (Doc. No. 19 ("Aba-Onu Aff.") ¶ 3, Ex. B.)

In a Decision of State Agency on Appeal dated October 29, 2013, the HSJ found that a PCA assessment was required and that Plaintiff was not eligible for shelter needy benefits without one, despite being otherwise qualified.  (Decision of State Agency on Appeal at 2-5.)  Specifically, the HSJ made the following findings of fact and conclusions of law:

> 5.     It is the agency's position the appellant does not meet the eligibility criteria for a MSA shelter needy allowance because he did not relocate to the community from an institution or treatment center; is not eligible for Personal Care Assistant (PCA) services (he has not had a PCA assessment) and does not receive waiver services.  However, he meets all other requirements.  He is on a waiting list for subsidized housing, he is under age 65 and his shelter expenses exceed 40 percent of his income.

---

[4]     Minnesota Statute section 256.045, subd. 3 provides that "State agency hearings are available" for:
> [a]ny person applying for, receiving or having received public assistance, medical care, or a program of social services granted by the state agency or a county agency or the federal Food Stamp Act whose application for assistance is denied, not acted upon with reasonable promptness, or whose assistance is suspended, reduced, terminated, or claimed to have been incorrectly paid[.]

Minn. Stat. § 256.045, subd. 3(a)(1).

. . .

10.     The appellant's eligibility for MSA is not at dispute.  What is at dispute is whether he meets the eligibility criteria for a MSA shelter needy allowance.  It is the representative's position an exception should be made for the requirement of having a PCA assessment because the appellant's diagnoses of Ehlers-Danlos Syndrome proves his eligibility for PCA services.  He further argued the appellant should be allowed reasonable accommodations under Title II of the Americans with Disabilities Act.  The judge concludes reasonable accommodations can be made, if needed, when conducting a PCA assessment.  However, Title II of the Americans with Disabilities Act does not negate the requirements set forth in law for a MSA shelter needy allowance or PCA assessments.

11.     The judge concludes the appellant does not meet the eligibility criteria for a shelter needy allowance based on the law set forth under conclusions of law three.  To qualify for the MSA needy shelter allowance, the appellant must receive PCA services.  Pursuant to the law, an assessment for PCA services must be completed and the appellant must be determined eligible for services.  There is no exception to this requirement.  Therefore, the judge concludes the appellant does not qualify for the MSA shelter needy allowance.  Accordingly, it is recommended the agency's decision not to approve the appellant for a MSA shelter needy allowance be upheld.

(*Id.* at 2-5.)  On October 30, 2013, the Commissioner adopted the HSJ's recommended findings of fact, conclusions of law, and order (the "DHS Decision").  (*Id.* at 5.)

On December 9, 2013, Plaintiff filed the present action.  (*See* Compl.)  Plaintiff alleges five causes of action:  (1) violations of Title II of the ADA, 42 U.S.C. §§ 12101, *et seq.*; (2) violations of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 706, 794; (3) violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983; (4) violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983; and (5) Judicial Review of State Administrative Decision, Minn. Stat.

§ 256.045, subd. 7.  (*Id.* ¶¶ 56-82.)  Attached to the December 9, 2013 Complaint is a

"Notice of Appeal" from the October 30, 2013 DHS Decision that is dated

November 27, 2013.  (Doc. No. 1-1.)  Defendants now move to dismiss Plaintiff's claims

in their entirety.  (Doc. Nos. 16, 22.)

## DISCUSSION

### I.  Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City

of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous

Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level."  *Id.* at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,"

will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.      Jurisdiction to Hear Plaintiff's Appeal of the Commissioner's Order

In this action, Plaintiff appeals the October 30, 2013 DHS Decision upholding the denial of MSA shelter needy benefits. In particular, Plaintiff asserts that the HSJ's decision was "erroneous and contrary to federal and state law, and should be reversed." (Compl. ¶ 80.)

Minnesota Statute section 256.045, subdivision 7, governs judicial review over state agency decisions, and provides in part:

> [A]ny party who is aggrieved by an order of the commissioner of human services . . . may appeal the order *to the district court of the county responsible for furnishing assistance* . . . by serving a written copy of a notice of appeal upon the commissioner and any adverse party of record within 30 days after the date the commissioner issued the order . . . and by filing the original notice and proof of service with the court administrator of the district court.

Minn. Stat. § 256.045, subd. 7 (emphasis added). Here, Plaintiff did not appeal the October 30, 2013 DHS Decision to the appropriate state district court. For that reason, this Court lacks jurisdiction to review the October 30, 2013 DHS Decision. *See, e.g.*, *Wilson v. Dryden*, 169 F. Supp. 2d 1010, 1012-13 (D. Minn. 2001) ("To the extent that this action is an appeal of the Commissioner's final order . . . then it should have been filed in state district court pursuant to Minn. Stat. § 256.045, subd. 7."). Thus, Plaintiff's

claim for Judicial Review of State Administrative Decisions (Count Five) is properly dismissed.

Plaintiff argues that the Court has supplemental jurisdiction over Plaintiff's appeal of the DHS Decision. The Court disagrees. First, Plaintiff did not properly appeal the DHS Decision as explained above. Therefore, the DHS Decision became final. *See Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 517 & n.11 (8th Cir. 1995) ("The State Board specifically addressed [plaintiff's] due process claim and decided it adversely to him. That decision became final when [plaintiff] chose not to appeal it."); *see also, e.g., Everts v. U.S. Soc. Sec. Admin.*, Civ. No. 08-4690, 2009 WL 3062010, at *4 (D. Minn. Sept. 18, 2009). In addition, although Plaintiff has submitted a Notice of Appeal dated November 27, 2013, the notice was not filed with the Court until December 9, 2013, outside the thirty-day window. (Doc. No. 1-1.) Therefore, any appeal would also be untimely.

## III.  Claim Preclusion

Claim preclusion "applies as an absolute bar to subsequent litigation when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Semler v. Klang*, 603 F. Supp. 2d 1211, 1224 (D. Minn. 2009) (citing *Brown–Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 220 (Minn. 2007)).

Plaintiff argues that Defendants have violated both the ADA and the Rehabilitation Act by requiring him to submit to a PCA assessment as a prerequisite for

eligibility for MSA shelter needy benefits.  (Compl. ¶¶ 58-60, 67-69.)[5]  The same set of

facts supporting Plaintiff's present claim were raised by Plaintiff in his appeal to DHS

and were before the HSJ.[6]  Plaintiff was represented by counsel at the evidentiary hearing

and had the opportunity (and did in fact) present exhibits and testimony.  After the

hearing, the HSJ concluded that the ADA did "not negate the requirements set forth in

law for a MSA shelter needy allowance or PCA assessments."  (Decision of State Agency

on Appeal at 2-5.)  The Commissioner filed an order adopting the HSJ's decision on

October 30, 2013.  As discussed above, Plaintiff had the opportunity to appeal the matter

to Minnesota state court, but did not do so, and the decision became final.  *See Plough*,

70 F.3d at 517 & n.11 (explaining that a final adjudicatory decision of an administrative

agency is entitled to res judicata in federal court).  Because the DHS Decision resolved

the factual issues presented by Plaintiff in both his ADA and Rehabilitation Act claims,

Plaintiff is precluded from bringing them now in the present action.  *See Everts*, 2009

WL 3062010, at *3 ("[B]ecause [plaintiff] had a full and fair opportunity to litigate his

---

[5]    The ADA and Rehabilitation Act are "similar in substance" and are interpreted
similarly.  *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998).  Indeed, "[t]he
rights, procedures, and enforcement remedies under [the ADA] are the same as under the
[Rehabilitation Act]."  *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).  Therefore
even though the Rehabilitation Act is not specifically referenced in the October 30, 2013
DHS Decision, Plaintiff's arguments on appeal to DHS regarding the ADA are the same
as any argument that could have been made under the Rehabilitation Act.

[6]    The proceedings before the HSJ involved Plaintiff and HCHS.  Although the
present lawsuit now includes DHS, presumably because DHS adjudicated Plaintiff's
claim regarding the denial of shelter needy benefits, the parties and the interests involved
in the present proceedings are identical to those involved in the appeal before the HSJ.

claims about the denial of relocation funding before the state agency, [plaintiff] cannot now bring a claim challenging that judgment in this Court."); *see also, e.g.*, *Nw. Nat'l Life Ins. Co. v. Cnty. of Hennepin*, 572 N.W.2d 51, 53 (Minn. 1997) (explaining that collateral estoppel prevents "parties to an action from re-litigating in subsequent actions issues that were determined in the prior action").[7]

## IV.   Procedural Due Process

In Count Three, Plaintiff alleges a procedural due process violation.  (Compl. ¶¶ 70-74.)  Specifically, Plaintiff alleges that the "actions and inactions of Defendants had the effect of denying Plaintiff adequate notice and a meaningful opportunity to be heard."  (*Id.* ¶ 74.)  To state a procedural due process claim, Plaintiff must allege that he has a constitutionally protected interest and that he was deprived of that interest without due process of law.  *Zineron v. Burch*, 494 U.S. 113, 125-26 (1990).  The "essential principle of due process is that a deprivation of live, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).  "(D)ue process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, Plaintiff's allegations demonstrate that he received notice and was given an

---

[7]     Because these claims are barred, the Court need not consider Defendants' alternative arguments for dismissal of Plaintiff's ADA and Rehabilitation claims.

opportunity to be heard.  (Compl. ¶¶ 44-46.)  Indeed, Plaintiff was afforded an

opportunity to be heard at an evidentiary hearing before the HSJ, at which time Plaintiff

presented testimony and evidence.  Therefore, Plaintiff's procedural due process claim

fails and is properly dismissed.  *See, e.g.*, *Linder v. State of Nebraska Dep't of Health &*

*Human Servs. Sys.*, 12 F. App'x 429, 431 (8th Cir. 2001) (granting summary judgment on

procedural due process claim because plaintiff received notice and an opportunity to be

heard).

   Plaintiff argues that he had an established property interest in shelter needy

benefits.  (Doc. No. 28 at 29.)  In particular, Plaintiff asserts that his property interest

accrued when the Defendants failed to issue a written denial within sixty days.  Plaintiff

claims, therefore, that he has stated a viable procedural due process claim for Defendants'

denial of a pre-deprivation process.  In sum, Plaintiff argues that he was entitled to a

hearing before the right to shelter needy benefits was denied.

   The Court disagrees.  First, Plaintiff was not receiving shelter needy benefits, nor

did he demonstrate that he was entitled to such benefits.  Instead, Plaintiff applied for

shelter needy benefits, but he was deemed ineligible to receive such benefits because he

failed to undergo a PCA assessment.  Second, Plaintiff's argument that he was entitled to

shelter needy benefits after the passage of sixty days from his initial submissions fails.

As noted above, there is a procedure provided for a person whose application for public

assistance is not acted upon with "reasonable promptness."  *See* Minn. Stat. § 256.045,

subd. 3.  Specifically, Minnesota law provides that "[s]tate agency hearings are available"

to "any person applying for public assistance . . . whose application for assistance is . . .

not acted upon with reasonable promptness." *Id.* Plaintiff, however, did not raise the alleged sixty-day violation during the evidentiary hearing on the denial of shelter needy benefits.

For the above reasons, the Court finds that Plaintiff's claim for a violation of procedural due process fails and is properly dismissed.

## V.     Equal Protection

In Count Four, Plaintiff alleges an equal protection claim against Defendants. (Compl. ¶¶ 76-77; Doc. No. 28 at 28.) Specifically, Plaintiff alleges that Defendants treated him, an individual with a disability who is "in danger of harm from the PCA assessment process," differently than other MSA recipients. (Compl. ¶¶ 75-77.) Generally, the Equal Protection Clause requires that state actors treat similarly situated people alike. *See Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000); *Klinger v. Dept. of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). Dissimilar treatment of dissimilarly situated persons does not violate the Equal Protection Clause. *Bogren*, 236 F.3d at 408 ("State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause.").

Here, Plaintiff argues that he was treated differently than other individuals who were required to undergo a PCA assessment because he could not undergo a PCA assessment by virtue of his disability. However, there is no dispute that an individual who seeks eligibility for PCA services must complete a PCA assessment. Thus, by requiring Plaintiff to undergo a PCA assessment to establish eligibility for self-directed support options, the Defendants simply treated Plaintiff the same as other potential MSA

aid recipients.  For this reason, Plaintiff's equal protection claim fails.

## VI.   *Monell* **Claims**

Plaintiff alleges that there is municipal liability for Plaintiff's Section 1983 claims

under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  As discussed above,

Plaintiff has failed to state a claim for an underlying violation of his constitutional rights.

There can be no *Monell* claim where there is no underlying violation of Plaintiff's

constitutional rights.  *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir.

2007); *see also Kost v. Hunt*, Civ. No. 13-583, 2013 WL 5566045, at *6 (D. Minn.

Oct. 8, 2013).  Accordingly, any *Monell* claim must be dismissed.

## VII.  **Proper Parties**

The Court notes that HCHS is an operating department of Hennepin County and is

not capable of suing or being sued under Minnesota law.  *See Everts*, 2009 WL 3062010,

at *2; *Undlin v. City of Minneapolis*, Civ. No. 08-1855, 2009 WL 703705, at *8

(D. Minn. Mar. 16, 2009).  Thus, for this reason, HCHS is not a proper party to this

lawsuit.[8]

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED**

that:

1.     State Defendants' Motion to Dismiss (Doc. No. [16]) is **GRANTED**.

---

[8]     Because Plaintiff's case is properly dismissed for the above reasons, the Court
need not reach the issue of whether Plaintiff's suit for monetary relief against State
Defendants in their official capacities is barred by the Eleventh Amendment.

2.      County Defendants' Motion to Dismiss (Doc. No. [22]) is **GRANTED**.

3.      Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 26, 2014                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge