## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eric Wong,                                              Civil No. 13-3378 (DWF/JSM)

                    Plaintiff,

v.

Minnesota Department of Human Services;                       **MEMORANDUM**
Emily Johnson Piper, in her capacity as                    **OPINION AND ORDER**
Commissioner of Minnesota Department of Human
Services; Hennepin County Human Services and
Public Health Department; and Rex A. Holzemer, in
his capacity as Director of Hennepin County Human
Services and Public Health Department,

                    Respondent.

_____

Eric Wong, *pro se*, for Plaintiff

Patricia A. Sonnenberg, Assistant Attorney General, Minnesota Attorney General's
Office, counsel for Defendants Minnesota Department of Human Services and
Emily Johnson Piper, Commissioner of Minnesota Department of Human Services.

Toni A. Beitz, Senior Assistant County Attorney, and Daniel D. Kaczor, Assistant
County Attorney, Hennepin County Attorney's Office, counsel for Defendants Hennepin
County Human Services and Public Health Department and Rex A. Holzemer, Director
of Hennepin County Human Services and Public Health Department.

_____

## INTRODUCTION

       This matter initially came before the Court on a Motion to Dismiss brought by the

Minnesota Department of Human Services ("DHS") and Lucinda Jesson, Commissioner

of Minnesota Department of Human Services ("the Commissioner") (together, "State

Defendants") (Doc. No. 16); and a Motion to Dismiss brought by Hennepin County

Human Services and Public Health Department ("HCHS") and Rex A. Holzemer,

Director of HCHS ("Holzemer") (together, "County Defendants") (Doc. No. 22). The

Court granted the State Defendants' and the County Defendants' Motions. (Doc.

No. 33.) The Order and Judgment was subsequently appealed to the Eighth Circuit Court

of Appeals, which affirmed in part and vacated in part and remanded the case back to this

Court for further proceedings consistent with the Eighth Circuit's opinion. (Doc.

Nos. 38, 39.)

The Court requested that the parties submit letters detailing what issues remained

to be considered following the Eighth Circuit's opinion. The parties agreed with the

outline of the issues submitted by the State Defendants. (Doc. No. 44.) This opinion will

address those issues.

## BACKGROUND

DHS is a state agency that provides services for people with disabilities, including

a financial support program called Minnesota Supplemental Aid ("MSA").[1] (Doc. No. 1

("Compl.") ¶ 9.) HCHS is a county agency that administers MSA. (*Id.* ¶ 11.)

---

[1]     The MSA program provides financial assistance for people who receive Social
Security Income ("SSI") (or would otherwise be eligible for SSI but whose income is too
high) to defray the costs of basic needs not met by the SSI, and can cover other costs for
"special needs," such as medically necessary diets and housing (or "shelter needy")
payments. *See* Minn. Stat. §§ 256D.44, 256D.45. A person who receives MSA for being
"shelter needy" is someone whose housing expenses exceed 40% of his or her gross
income. (*See* Compl.¶ 22 (citing Minn. Stat. § 256D.44, subd. 5(f)(3).)

Johnson Piper is the Commissioner of DHS.  (*Id.* ¶ 10.)  Holzemer is the Director of HCHS.  (*Id.* ¶ 12.)

Mr. Wong alleges that he is currently, and has been for two years prior to filing his Complaint, receiving SSI benefits from the federal government on the basis of his disability—Ehlers-Danlos syndrome, a genetic disorder caused by a "defect in the synthesis of collagen" that results in elasticity of joints, blood vessels, and organs.  (*Id.* ¶¶ 2, 8 & Ex. A ("Decision of State Agency on Appeal") at 2.)

Mr. Wong began receiving general assistance benefits ("GA") from the State in late 2005 and soon thereafter began the process of seeking SSI.  (Compl. ¶ 32.)  Upon being found eligible for SSI in March 2011, Mr. Wong became ineligible to receive GA payments.  (*Id.* ¶ 34.)  Mr. Wong alleges that he sought MSA benefits for medically necessary diets and housing assistance and that, in March 2011, HCHS initially denied MSA assistance based on a verbal screening process.  (*Id.*)  Mr. Wong further alleges that, in August 2011, he was again verbally denied MSA benefits after submitting a written application.  (*Id.*  ¶ 35.)  Mr. Wong asserts that he sent "multiple written appeals" to HCHS supervisors and that, on August 31, 2012, HCHS reconsidered its position and approved Mr. Wong for the special diets benefit, but did not approve the shelter needy benefits.  (*Id.* ¶¶ 35-36.)

Mr. Wong alleges that he continued to appeal "the action and inactions of HCHS" and the denial of benefits.  (*Id.* ¶¶ 37-43.)  In April 2013, Mr. Wong alleges that the Defendants notified him of a reduction in benefits because of a reported increase in his

federal benefits; this included completely closing his MSA account.  (*Id.* ¶ 41.)

Mr. Wong asserts that he appealed this decision in writing.  (*Id.* ¶¶ 41, 43.)  Mr. Wong

alleges that HCHS was unresponsive.  (*Id.*)

On July 15, 2013, Mr. Wong filed an administrative appeal with DHS because of

the alleged unresponsiveness of HCHS and lack of action on his appeal to reinstate MSA

benefits.  (*Id.* ¶ 44.)  Mr. Wong also requested back payments of his special diets benefits

under MSA and that reasonable accommodations be made in his application for shelter

needy benefits so that a required Personal Case Assistance ("PCA") assessment[2] could be

waived.  (*Id.*)[3]  Two of these issues—the MSA back payments of special diet benefits and

the reinstatement of his MSA case—were resolved before the administrative hearing took

place.  (*Id.* ¶ 45.)

In his appeal, Mr. Wong alleged that the required PCA assessment would pose a

danger to his physical health if given by someone who was not familiar with his rare

genetic disorder.  (*Id.* ¶ 44.)  Mr. Wong instead requested that, as a reasonable

---

[2]     A PCA assessment is an in-person review and evaluation of a recipient's need for personal care assistance that includes, among other things, documentation of health status, determination of need, evaluation of service effectiveness, and the identification of appropriate services.  (Compl. ¶ 25 (citing Minn. Stat. § 256B.0659, subd. 3a).)

[3]     Eligibility for self-directed supports, a determining criterion for eligibility for shelter needy benefits, rests on five qualifications:  (1) the recipient also receives Medical Assistance; (2) the recipient is eligible for PCA services; (3) the recipient lives in his or her own apartment or home; (4) the recipient is able to establish and manage service providers; and (5) the recipient is not otherwise disqualified from receiving the services by the Commissioner of Minnesota DHS.  (Compl. § 24 (citing Minn. Stat. ¶ 256B.0657, subd. 2).)

accommodation under the Americans with Disabilities Act ("ADA"), other "documentation of his limitations in major life activities" be accepted in lieu of a PCA assessment for proof of eligibility for shelter needy benefits.  (Decision of State Agency on Appeal at 3.)

On August 22, 2013, Human Services Judge Marion F. Rucker (the "HSJ") held an evidentiary hearing pursuant to Minnesota Statute section 256.045, subdivision 3,[4] addressing the following issue on appeal:  "Whether the County agency correctly denied [Mr. Wong's] request for the [MSA] housing allowance on the grounds, he does not meet the eligibility criteria."  (*Id.* at 2.)  At the hearing, Mr. Wong entered several exhibits. (Doc. No. 19 ("Aba-Onu Aff.") ¶ 3, Ex. B.)

In a Decision of State Agency on Appeal ("HSJ Decision"), the HSJ found that a PCA assessment was required and that Mr. Wong was not eligible for shelter needy benefits without one, despite being otherwise qualified.  (Decision of State Agency on

---

[4]     Minnesota Statute section 256.045, subd. 3, provides that:

State agency hearings are available for:

> [a]ny person applying for, receiving or having received public assistance, medical care, or a program of social services granted by the state agency or a county agency or the federal Food Stamp Act whose application for assistance is denied, not acted upon with reasonable promptness, or whose assistance is suspended, reduced, terminated, or claimed to have been incorrectly paid[.]

Minn. Stat. § 256.045, subd. 3(a)(1).

Appeal at 2-5.)  Specifically, the HSJ made the following findings of fact and conclusions

of law:

> 5.      It is the agency's position the appellant does not meet the
> eligibility criteria for a MSA shelter needy allowance because he did not
> relocate to the community from an institution or treatment center; is not
> eligible for Personal Care Assistant (PCA) services (he has not had a PCA
> assessment) and does not receive waiver services.  However, he meets all
> other requirements.  He is on a waiting list for subsidized housing, he is
> under age 65 and his shelter needy expenses exceed 40 percent of his
> income.
>
> . . .
>
> 10.     The appellant's eligibility for MSA is not at dispute.  What is
> at dispute is whether he meets the eligibility criteria for a MSA shelter
> needy allowance.  It is the representative's position an exception should be
> made for the requirement of having a PCA assessment because the
> appellant's diagnoses of Ehlers-Danlos Syndrome proves his eligibility for
> PCA services.  He further argued the appellant should be allowed
> reasonable accommodations under Title II of the Americans with
> Disabilities Act.  The judge concludes reasonable accommodations can be
> made, if needed, when conducting a PCA assessment.  However, Title II of
> the Americans with Disabilities Act does not negate the requirements set
> forth in law for a MSA shelter needy allowance or PCA assessments.
>
> 11.     The judge concludes the appellant does not meet the
> eligibility criteria for a shelter needy allowance based on the law set forth
> under conclusions of law three.  To qualify for the MSA needy shelter
> allowance, the appellant must receive PCA services.  Pursuant to the law,
> an assessment for PCA services must be completed and the appellant must
> be determined eligible for services.  There is no exception to this
> requirement.  Therefore, the judge concludes the appellant does not qualify
> for the MSA shelter needy allowance.  Accordingly, it is recommended the
> agency's decision not to approve the appellant for a MSA shelter needy
> allowance be upheld.

(*Id.* at 2, 4-5.)  On October 30, 2013, the Commissioner adopted the HSJ's recommended

findings of fact, conclusions of law, and order (the "HSJ Decision").  (Compl. ¶ 46.)

6

On December 8, 2013, Mr. Wong filed the present action.  (*See* Compl.)  Plaintiff alleges five causes of action:  (1) violations of Title II of the ADA, 42 U.S.C. §§ 12101, *et seq.*; (2) violations of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 706, 794; (3) violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1982; (4) violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983; and (5) Judicial Review of State Administrative Decision, Minn. Stat. § 256.045, subd. 7.  (*Id.* ¶¶ 56-82.)  Attached to the December 9, 2013 Complaint is a "Notice of Appeal" from the October 30, 2013 DHS Decision that is dated November 27, 2013.  (Doc. No. 1-1.)

Defendants moved to dismiss Mr. Wong's claims on a variety of grounds.  (Doc. Nos. 16 & 22.)  The Court concluded that the claims should be dismissed for lack of jurisdiction, on grounds of claim preclusion, and for failing to state a claim for violations of the Due Process and Equal Protection Clauses of the Constitution.  (Doc. No. 33.)  Mr. Wong appealed the decision to the Eighth Circuit, which affirmed dismissal of the Due Process and Equal Protection claims and reversed, vacated the Court's order, and remanded as to the remaining claims.  (Doc. No. 38.)

The Court requested that the parties submit letters detailing what issues remained to be considered following the Eighth Circuit's opinion.  (Doc. No. 43.)  The parties agreed with the outline of the issues submitted by the State Defendants.  (Doc. Nos. 44-46.)  The remaining issues are:  (1) whether Plaintiff Eric Wong's Complaint

fails to state a claim for relief under the Americans with Disabilities Act ("ADA"); (2)

whether the Complaint fails to states a claim for relief under the Rehabilitation Act

("RA"); (3) whether the Eleventh Amendment to the United States Constitution bars

Mr. Wong's claims for monetary relief under the ADA and RA; (4) whether the Eleventh

Amendment bars Plaintiff's state law claims; and (5) whether the Court should properly

exercise supplemental jurisdiction over Mr. Wong's state law claims.  (Doc. No. 44.)

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986).  However, a court need not accept as true wholly conclusory allegations,

*Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal

conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901

F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public

record, orders, materials embraced by the complaint, and exhibits attached to the

complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v.

Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id.* at 555.  The United States Supreme Court further reiterated that "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,"

will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550

U.S. at 556.

## II.     Mr. Wong's ADA and RA Claims

Mr. Wong claims that the Defendants' decision to adopt the HSJ Decision

requiring Mr. Wong to undergo a PCA assessment to be eligible for shelter needy

benefits, despite his disability and request for accommodation, fails to meet the

requirements of Title II of the ADA and Section 504 of the RA.  Mr. Wong claims that

requiring a PCA assessment, which he alleges would pose a "risk of bodily harm and

pain[,]" discriminates against him on the basis of his disability.  (Compl. ¶ 60.)

Mr. Wong further claims that the HSJ's conclusion that "reasonable accommodations can

be made, if needed, when conducting a PCA assessment" fails to meet the requirements

of the ADA and RA by still insisting on a PCA assessment.  (*Id.* ¶ 61.)  Finally, Mr.

Wong alleges that Defendants failed to provide any reasonable accommodation for his

disability.  Defendants contend that Mr. Wong fails to state a claim for relief under the

ADA or RA because Mr. Wong has not alleged facts sufficient to satisfy the "deliberate

indifference standard" through which claims of discrimination on the basis of disability

are analyzed.  Defendants argue that any denial of shelter needy benefits was the result of

Mr. Wong's failure to undergo a PCA assessment, and not based on his disability.  (*See*

Doc. No. 25, at 6.)

### A.      Prima Facie Case

To make a claim under the Title II of the ADA, Mr. Wong must show that "(1) he

is a person with a disability as defined by statute; (2) he is otherwise qualified for the

benefit in question and (3) he was excluded from the benefit due to discrimination based

upon disability."  *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (referencing

42 U.S.C. § 12131, *et seq.*).  Similarly, to state a claim under Section 504 of the RA,

Mr. Wong must show that he "(1) is a qualified individual with a disability; (2) was

denied the benefits of a program or activity; and (3) was discriminated against based on

[his] disability."  *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir.

2008) (citing *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir.

1999)).  The Eighth Circuit has held that the ADA and the RA are "similar in substance"

and "cases interpreting either are applicable and interchangeable."  *Gorman v. Bartch*,

152 F.3d 907, 912 (8th Cir. 1998) (citing *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th

Cir. 1996)).

Defendants do not contest in the present motions that Mr. Wong alleged that he is

disabled or that but for failing to undergo a PCA assessment, Mr. Wong would be

qualified for shelter needy benefits.  As to the third element, the Court concludes that the

allegations in the Complaint, accepted as true for the purposes of the present motions,

establish that Mr. Wong was discriminated against on the basis of his disability.

The ADA is designed, in part, to address the "failure to make modifications to

existing facilities and practices" which is "one of the various forms of discrimination at

which the law is directed." *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist.*

*No. 11*, 538 F. Supp. 2d 1125, 1140 (D. Minn. 2008) (citing 42 U.S.C. § 12101(a)(5))

(quotations omitted).  The regulations promulgated under the ADA, which have the force

of law, require covered entities to provide reasonable accommodation unless doing so

would "fundamentally alter" the affected program.  *Id.* (citing 28 C.F.R. § 35.130(b)(7)).

These regulations provide that "[n]o qualified individual with a disability shall, on the

basis of disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity[.]"  28 C.F.R. § 35.130(a).

Furthermore, these regulations require public entities to "make reasonable modifications

in policies, practices, or procedures when the modifications are necessary to avoid

discrimination on the basis of disability" unless those modifications would fundamentally

alter the nature of the services, programs, or activities offered.  28 C.F.R. § 35.130(b)(7).

Thus, the ADA and the RA "prohibit, as a type of disability discrimination, the failure to

provide reasonable accommodations to a disabled person."  *AP ex rel. Peterson*, 538 F.

Supp. 2d at 1140.

Drawing all reasonable inferences in favor of Mr. Wong, the allegations in the

Complaint plausibly allege that Mr. Wong has been excluded from shelter needy benefits

11

because of his disability.  Mr. Wong detailed his interactions with the Defendants

regarding his benefits, culminating the HCHS's decision to grant Mr. Wong "special

diets" benefits but not "shelter needy" benefits.  (Compl. ¶¶ 32-36.)  He further includes

allegations detailing the appeals process for those decisions by HCHS, including the

issuance of a letter from his doctor recommending PCA services for Mr. Wong.  (Compl.

¶¶ 36-45.)  Mr. Wong alleged that the HSJ Decision noted that Mr. Wong did not meet

the eligibility for shelter needy benefits because he had not received a PCA assessment

while noting that "reasonable accommodations can be made, if needed, when conducting

a PCA assessment."  (Compl. ¶ 46.)  Mr. Wong alleged that he meets all criteria for

shelter needy benefits, but for the PCA assessment, and that he is unable to undergo a

PCA assessment due to his disability.  (Compl. ¶¶ 50 & 60.)  Taking these allegations as

true, Mr. Wong would have received shelter needy benefits but was unable to complete

one assessment because of his disability.  By not granting those benefits, Defendants

failed to provide a reasonable accommodation necessary to avoid discrimination on the

basis of disability.  28 C.F.R. § 35.130(b)(7).

Defendants argue that the PCA assessment would not have resulted in any of the

harms feared by Mr. Wong.  However, at this stage, the Court must accept the contrary

factual allegations in the Complaint and draw all reasonable inferences from them.

*Morton*, 793 F.2d at 187.  Mr. Wong alleges that he has a "well-substantiated fear and

apprehension of bodily harm and/or severe pain from a physical examination" conducted

by a person unfamiliar with Mr. Wong's medical condition and that his doctors have

recommended that he not undergo such assessments due to the risk of bodily harm and/or severe pain. (Compl. ¶ 48.) Whether those fears are well founded or Mr. Wong's doctors are correct is an issue not properly resolved at this stage.

Defendants additionally argue that Mr. Wong fails to state a discrimination claim based on failure to provide a reasonable accommodation because Mr. Wong did not inform Defendants of his requested accommodation before shelter needy benefits were denied for failing to undergo a PCA assessment. Defendants, however, misunderstand Mr. Wong's claim. Mr. Wong makes clear that his cause of action is based on the Defendants' adoption of the HSJ Decision, which denied Mr. Wong shelter needy benefits. (Compl. ¶ 61.) As part of the proceedings leading to that order, Mr. Wong asked for reasonable accommodations in determining his eligibility for shelter needy benefits. (Compl. ¶ 44.) Thus, while Mr. Wong has an affirmative duty to seek an accommodation so Defendants need not guess at what accommodation should be provided, *Randolph*, 170 F.3d at 858, Mr. Wong has done so.

Finally, Defendants argue that providing the accommodation requested by Mr. Wong would result in a substantial alteration to the MSA shelter needy benefit program. Accommodations under the ADA are not required when they would "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). However, Defendants' argument is misplaced at this juncture. While it is an affirmative defense to a claim predicated on lack of reasonable accommodation, Defendants point to no authority establishing that it is Mr. Wong's burden to allege in the

13

Complaint that the proposed modification would not result in a fundamental alteration to the MSA shelter needy benefits program.  To the contrary, the ADA regulations explicitly provide that *the entity* must demonstrate that making the modification would fundamentally alter the subject program.  28 C.F.R. § 35.130(b)(7).[5]

### B.     Compensatory Damages

While Mr. Wong states a valid claim under the ADA and RA, a separate analysis is required to determine whether Mr. Wong has pled facts sufficient to pursue compensatory damages.  To prevail in a claim for compensatory damages under these statues, Mr. Wong is required to allege facts establishing intentional discrimination. *Saunders v. Mayo Clinic*, No. CIV. 13-1972 JNE/HB, 2015 WL 774132, at *5 (D. Minn. Feb. 24, 2015) (citing *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011)). Intentional discrimination can be established through a showing of deliberate indifference.  *Id.*  Under the deliberate indifference standard, intentional discrimination "does not require a showing of personal ill will or animosity towards the disabled person," but instead can be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  *Meagley*, 639 F.3d at 389.

---

[5]     The State Defendants additionally argue that they cannot be held vicariously liable for the actions of the County Defendants.  (Doc. No. 18, at 16.)  Mr. Wong pled that the denial of benefits was a decision adopted by all of the Defendants collectively.  (Compl, ¶ 61.)  This allegation is sufficient for the case to proceed against all of the Defendants at this juncture.

Here, taking the allegations in the Complaint as true, Mr. Wong has alleged intentional discrimination on the basis of his disability.  Defendants argue that the denial of shelter needy benefits was the result not of discrimination but instead of Mr. Wong's failure to obtain a PCA assessment.  (Doc. No. 18, at 16 n.12; Doc. No. 25, at 6.) Mr. Wong, however, alleges facts establishing that the inflexible insistence on the PCA-assessment requirement would likely result in a violation of the ADA.  Mr. Wong specifically requested exemption from the requirement.  (Compl. ¶ 44.)  The HSJ recommended some form of accommodation while nonetheless concluding that the ADA did not require a modification.  (*Id.* ¶ 46.)  Defendants adopted the HSJ's recommendation.  (*Id.*)  While this does not show any ill will or animosity towards Mr. Wong, these allegations do permit discrimination to be inferred by Defendants' alleged indifference to Mr. Wong's requested and allegedly required accommodation. Simply put, taking Mr. Wong's allegations as true, Defendants denied Mr. Wong shelter needy benefits based on a requirement Mr. Wong could not comply with based on his disability, and did so knowing that Mr. Wong could not comply with the requirement.

Because Mr. Wong alleges facts which, if true, establish both the denial of a requested reasonable accommodation and the deliberate indifference to Mr. Wong's federally-protected right to equal access to benefits, notwithstanding his disability, the Complaint states a claim under the ADA and RA.

### III.    Eleventh Amendment

Defendants argue that at least some of Mr. Wong's claims against DHS and

HCHS, as well as all claims against all Defendants for monetary damages, must be

dismissed on the basis of sovereign immunity.  The Eleventh Amendment provides that

states and their agencies are immune from suit in federal court, unless the state has

consented to be sued, or Congress has abrogated the state's immunity by some express

statutory provision.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 66-67 (1989);

*Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995).  The Supreme Court

has identified a longstanding exception to Eleventh Amendment sovereign immunity,

permitting suits against state officers that seek prospective injunctive relief to enforce

compliance with federal law.  *See Ex parte Young*, 209 U.S. 123 (1908).  Mr. Wong pled

ADA and RA claims against Commissioner Jesson and Director Holzemer ("Individual

Defendants") in their official capacities.  Mr. Wong also asserted claims against the DHS

and HCHS ("Entity Defendants").  These claims request both for injunctive relief and

monetary damages.

### A.    Injunctive Relief Against Individual Defendants

Mr. Wong's Complaint requests that the Court issue injunctive relief to ensure his

access to shelter needy benefits.  (Compl. ¶ 95.)  For their part, Defendants do not contest

the propriety of the claim for injunctive relief against the individual defendants.  Indeed,

such injunctive relief may be pursued under the Supreme Court's long-standing precedent

of *Ex parte Young*, which is an "[e]xtremely important" and "substantial" limitation on

state sovereign immunity "accepted as necessary to 'permit federal courts to vindicate

federal rights.'"  *Denke v. S.D. Dep't of Soc. Servs.*, 829 F.2d 688, 689 (8th Cir. 1987);

*Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation

omitted).  Therefore, Mr. Wong's claim for injunctive relief may continue.

### B.   Injunctive Relief and Monetary Damages against the Entity Defendants

In addition to seeking injunctive relief against the individual defendants in their

official capacities, Mr. Wong also seeks injunctive and monetary relief against the entity

defendants.[6]  *Ex Parte Young* only applies to requests for injunctive relief against

individual defendants in their official capacities.  Thus, the Eleventh Amendment

continues to provide immunities to state governmental entities for claims for injunctive

relief and monetary damages.

Congressional abrogation may override the sovereign immunity afforded to states

and their agencies under the Eleventh Amendment.  *See Will*, 491 U.S. at 66-67;

*Egerdahl*, 72 F.3d at 619.  With respect to the Rehabilitation Act, Congress has enacted

the following provision to abrogate state sovereign immunity:  "A State shall not be

---

[6]     Mr. Wong seeks monetary damages against the Individual Defendants as well.  As the *Ex parte Young* decision only applies to injunctive relief, the Eleventh Amendment analysis regarding the Entity Defendants applies equally to the monetary claims against the Individual Defendants.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that a lawsuit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the officials' office and "[a]s such is no different from a suit against the State itself").

immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ." 42 U.S.C. § 2000d-7(a)(1).  Applying this provision to a Rehabilitation Act claim against the State of Arkansas, the Eighth Circuit has explained that "[t]he Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504."  *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000).  However, because the definition of a "program or activity" covered under the Rehabilitation Act does not include a state itself, the state's waiver of sovereign immunity is limited to the state agency that accepts or distributes the federal funds.  *See id.* at 1080-81 (construing 29 U.S.C. § 794(b)).  In other words, "[t]he acceptance of funds by one state agency . . . leaves unaffected both other state agencies and the State as a whole."  *Id.* at 1081; *see also Doe v. Nebraska*, 345 F.3d 593, 598 (8th Cir. 2003) ("[T]his waiver of sovereign immunity is limited and applies only to the individual agency that receives the federal funds.").  This is true even if the state itself is the entity that "applie[s] for and receive[s] federal grants" to be used by a specific agency.  *See Doe*, 345 F.3d at 599-600.

Mr. Wong alleges that DHS "is the recipient and administrator of federal financial assistance[,]" including "federal funds from the U.S. Department of Agriculture for the SNAP food stamp program and federal funds from the U.S. Department of Health and Human Services[.]"  (Compl. ¶ 9.)  Mr. Wong similarly alleges that HCHS is the "recipient of federal financial assistance[,]" including "federal funds from the U.S.

Department of Agriculture for the SNAP food stamp program and federal funds from the

U.S. Department of Health and Human Services[.]"  (Compl. ¶ 11.)  Defendants argue

that sovereign immunity has not been waived under the RA because Minnesota law

prohibits Defendants from using federal funding for the programs at issue.  (Doc. No. 29,

at 2, n.1 (citing Minn. Stat. § 256D.36).)  This factual dispute is not suitable for

resolution at this state, and accepting all alleged facts in the Complaint, Defendants

cannot at this point shield themselves from Mr. Wong's RA claim.

While the ADA claim is functionally similar to the RA claim, the Eleventh

Amendment analysis is different.  Abrogation of a State's sovereign immunity is an

exercise of Congress' power under Section 5 of the Fourteenth Amendment to the

United States Constitution.  *See Klinger v. Dir., Dep't of Revenue*, 455 F.3d 888, 893 (8th

Cir. 2006).  Abrogation of a State's Eleventh Amendment immunity is considered on a

case by case basis, and abrogation is inappropriate where Congress exceeds its power to

enforce rights protected through the Fourteenth Amendment.  *Id.*  Neither party has

directed the Court to any authority demonstrating that the denial of shelter needy benefits

to Mr. Wong implicates a constitutional right protected by the Fourteenth Amendment.

As such, the Court dismisses the ADA claims against the claims for monetary damages

and injunctive relief against the Entity Defendants.

### C.    Eleventh Amendment and State Law Claims

Defendants additionally argue that the Eleventh Amendment bars the Court from

enforcing Minnesota Statutes sections 256D.395 and 256D.405, subdivision 1a.  (Doc.

19

No. 18, at 24-26.)  Defendants' arguments are misplaced.  The state law provisions cited by Defendants are referenced in claims Mr. Wong made under 42 U.S.C. § 1982.  The Court previously dismissed those claims, and the Eighth Circuit affirmed the Court's decision on those matters.  (Doc. No. 38.)  Thus, the state-law-related arguments set out by Defendants are no longer relevant to the claims remaining.

## IV.  Supplemental Jurisdiction and Appeal of Order

While Mr. Wong states a federal claim under the RA and ADA against the Defendants, the Court must next determine whether to exercise supplemental jurisdiction over the appeal of the HSJ Decision.  Under 28 U.S.C. § 1367(a), a federal court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Thus, a federal court may properly exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact" as the federal claims.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).  The Court may decline to exercise jurisdiction over a claim if (1) the claim "raises a novel or complex issue of State law, (2) the state-law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in "exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

20

The appeal of the HSJ Decision and Mr. Wong's ADA and RA claims are part of the same case and controversy. All of the claims stem from Defendants' denial of shelter needy benefits to Mr. Wong. These claims share a "common nucleus of operative fact." *See Int'l Coll. of Surgeons*, 522 U.S. at 165. Thus, the Court may exercise supplemental jurisdiction over the appeal. Furthermore, the claim does not appear to raise "novel or complex issue[s] of State law," the appeal does not "predominate[] over" the federal claims at issue, federal claims remain pending after this order, and no other compelling reasons for declining jurisdiction have been presented.

The Court recognizes that the Eighth Circuit raised the possibility of abstention doctrines applying that may require the Court to decline to exercise supplemental jurisdiction over the HSJ Decision appeal. (Doc. No. 38, at 13-14.) The parties have not briefed any of those abstention doctrines in their initial briefing, which all occurred prior to the Eighth Circuit's opinion. "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action[.]" *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Should Defendants believe that abstention doctrines compel the Court to decline to exercise supplemental jurisdiction, Defendants are not foreclosed from raising those issues at a later time, including at summary judgment.

## CONCLUSION

Mr. Wong plausibly alleges that he was denied benefits through the failure of Defendants to provide reasonable accommodations for his disability. These allegations state a claim, at the pleading stage, for which relief can be granted, under the ADA and

RA.  However, the Eleventh Amendment limits those claims.  The Eleventh Amendment precludes an action under the ADA against DHS and HCHS, as well as monetary damages against Commissioner Jesson and Director Holzemer.  The remaining ADA claims and RA claims will proceed.   In addition, the Court will exercise supplemental jurisdiction over Mr. Wong's appeal of the HSJ Decision.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1.      State Defendants' Motion to Dismiss (Doc. No. [16]) is **GRANTED IN PART** and **DENIED IN PART**.

2.      County Defendants' Motion to Dismiss (Doc. No. [22]) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Plaintiff Eric Wong's claims under the ADA against Defendants DHS and HCHS are **DISMISSED WITH PREJUDICE**.  Mr. Wong's claims for monetary damages under the ADA against all Defendants are **DISMISSED WITH PREJUDICE**. Mr. Wong's claims for injunctive relief against Defendant Piper Johnson and Defendant Holzemer remain.  Mr. Wong's claims under the RA against all Defendants remain.  The Court will exercise supplemental jurisdiction over Mr. Wong's appeal of the HSJ Order under Minn. Stat. § 256.045, subd. 7.


Dated:  October 26, 2016                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge